## COMMONWEALTH vs. WILLARD E. BOHANNON, JR.

Plymouth. December 9, 1981. — April 9, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Evidence,* Previous testimony of unavailable witness, Hospital record. *Constitutional Law,* Confrontation of witnesses. *Due Process of Law,* Extrajudicial statement. *Witness,* Unavailability.

Discussion of cases regarding the admissibility of prior reported testimony at the trial of a criminal case. [740-742]

The Commonwealth's resort to the procedures of G. L. c. 233, § 13B, to secure the attendance of an out-of-State witness at a criminal trial, and its subsequent failure to secure the witness's attendance, may, in appropriate circumstances, be the basis for a finding of "unavailability" for the purpose of admitting the witness's prior reported testimony. [742-744]

Where the testimony of the complainant at the trial of indictments for rape and related offenses was vital to the Commonwealth's case, and her credibility was a central issue, and where her testimony at the defendant's first trial was "inconsistent and confused," and at variance with her testimony at a probable cause hearing, the trial judge's reliance on a Florida judge's ruling, thirteen months prior to trial, that it would be an "undue hardship" to compel the attendance of the complainant at trial in Massachusetts was inadequate to establish her "unavailability" at the time of trial for the purpose of admitting her reported testimony given at the probable cause hearing. [744-746]

Where counsel for the defendant at a trial of indictments for rape and related offenses had had an adequate opportunity to examine the complainant under oath at a probable cause hearing, her reported testimony given at the hearing bore sufficient indicia of reliability to sanction its use at trial without violating the defendant's constitutional right to confront the witnesses against him. [746-749]

At the trial of an indictment for rape the judge did not abuse his discretion in excluding, as unreliable hearsay, certain hospital records offered under G. L. c. 233, § 79, to prove the falsity of the complainant's prior rape accusations. [749-750]

The exclusion of hearsay statements offered in evidence at the trial of an indictment for rape to prove the falsity of one of the complainant's prior rape accusations, a proposition central to the defendant's case,

did not violate the defendant's rights to due process of law, where the circumstances of the statements did not carry assurances of their reliability and where the statements could have been obtained by deposition and offered in admissible form.  [750-752]

INDICTMENTS found and returned in the Superior Court on January 24, 1975.

After review by this court reported at 376 Mass. 90 (1978), a second trial was held before *Meyer*, J., and a motion for a new trial was heard by him.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Brownlow M. Speer* for the defendant.

*John P. Corbett*, Assistant District Attorney, for the Commonwealth.

LIACOS, J.  The defendant, Willard E. Bohannon, Jr., was convicted on March 27, 1980, after a second jury trial, of rape, kidnapping, commission of an unnatural act, and assault and battery by means of a dangerous weapon.  The defendant was sentenced on the rape conviction to fifteen to twenty years at the Massachusetts Correctional Institution, Walpole, and received concurrent sentences of nine to ten years, four to five years, and four to six years, respectively, on the other convictions.  The defendant was originally convicted by a jury on the same indictments in February, 1976.  We reversed those convictions and remanded the case for a new trial.  *Commonwealth* v. *Bohannon*, 376 Mass. 90 (1978).  The defendant now appeals his second convictions.  He also appeals the denial of his motion for a new trial.  We transferred the appeals here on our own motion.

The defendant raises essentially three issues on this appeal:  First, that the trial judge erred in admitting in evidence a tape recording of the alleged victim's testimony given at a 1974 probable cause hearing, thus violating the defendant's constitutional right to confront the witness against him; second, the trial judge improperly excluded as hearsay certain hospital records and also an extrajudicial

statement made by the complainant's mother; and third, that the trial judge violated the defendant's right to a public trial in ordering, sua sponte, the closing of the courtroom during a voir dire examination of a proposed witness.

We agree that there was error of a constitutional magnitude in the admission of the complaining witness's reported testimony and, accordingly, we reverse the convictions. We discuss also the evidentiary issues concerning the particular evidence excluded at trial. We need not reach the defendant's third claim of error.

The defendant was put to trial before a jury in March, 1980. The prosecution's case consisted entirely of the testimony of the arresting officers, a physician, and a chemist, and a tape recording of the alleged victim's testimony given at a probable cause hearing in late October, 1974.[1] At the defendant's first trial, the prosecutor presented a similar case, except that the complainant testified in person. See *Bohannon, supra* at 91. The defendant testified at both trials in his own defense, and his testimony did not significantly vary.

There was evidence in the instant case of these facts. On May 22, 1974, the defendant and two male companions picked up the complainant, who was hitchhiking to Brockton. The four proceeded to a sandpit in Brockton, a local "lovers' lane," where various sexual acts took place. The complainant's and the defendant's testimony was similar as to what sexual acts occurred, but varied significantly as to whether the complainant had consented to participate.

The complainant, in the 1974 probable cause hearing, testified that she was "thumbing" a ride home and accepted a ride from the defendant and his companions, thinking that she knew one of them. She asked to be left off in Brockton. The automobile, however, proceeded to a sandpit and the defendant stated, "Let's drop down here for one minute, and then we'll go to Brockton."

---

[1] The incident underlying the indictments occurred on May 22, 1974.

The complainant further testified at the probable cause hearing that, on arrival at the sandpit, the defendant "tore [her] clothes off,"[2] while either inside the automobile or outside the automobile, and at some point Bohannon and she left the automobile. To paraphrase her testimony, she maintained that the defendant forced her to commit fellatio and also inserted a bottle and a stick into her vagina. The complainant testified that one of the defendant's companions raped her, but Bohannon did not have intercourse with her because she told him that she "[couldn't] have sex."[3]

Bohannon testified that he recognized the complainant because he had picked her up hitchhiking before. After she got into the car, the group set out and bought two quarts of beer. Bohannon asked the complainant if she wanted to go drinking with them, and she agreed. The group proceeded to the sandpit where the complainant consented to the sexual activities that occurred. The defendant testified that he asked her to get out of the car with him, and she did. They went to the rear of the car and kissed for some time. She then took off her clothes and performed fellatio on him. They lay down together on top of her clothes about fifteen feet away from the car, but Bohannon was unable to engage

---

[2] None of the complainant's clothes or undergarments was torn. When asked how the defendant undressed her, she testified that he had "[u]nbutton[ed]" her blouse. When her attention was called to the fact that she had been wearing a white turtleneck sweater, she changed her testimony saying that he had "slipped it off over my head."

[3] Bohannon was first tried with Robert Stonestreet, one of his companions. The third companion, a juvenile, was apparently tried separately. *Commonwealth* v. *Bohannon*, 376 Mass. 90, 91 & n.1 (1978). The juvenile is now deceased. At the first trial the victim testified on direct examination that Stonestreet had raped her. *Bohannon, supra* at 91. "However, after her trial testimony was concluded, she informed the district attorney that she was now uncertain as to whether Stonestreet was involved. When recalled by the district attorney, the complainant testified that Stonestreet had not raped her." *Id.*

The complainant also testified at the first trial that Bohannon had raped her. When she was asked on cross-examination to explain the inconsistency between her testimony at trial and that given at the probable cause hearing, she "stated that she had recently seen 'in a mist' that Bohannon had penetrated her." *Id.*

in intercourse. Bohannon testified that the complainant became annoyed with him and asked him to "use something else." She handed him a stick which he briefly inserted in her, and a beer bottle which he also inserted.

The arresting officers testified that when they arrived at the sandpit, an area that they patrolled on a regular basis, they observed three men around the complainant, one of them on top of her. As the three moved toward their automobile, Bohannon and another male were seen pulling up their pants. The complainant ran toward the officers calling for help. The defendant was arrested and, on route to the police station, admitted engaging in various sexual acts, including intercourse.

Medical evidence as to the complainant's injuries indicated that she had a bruise over her left eye and a small cut of the cervix, which slowly oozed blood for several hours. No evidence of sperm was found. The chemist stated that traces of an undetermined blood type were found on the stick and bottle.

We briefly discuss the nature of the defendant's prior appeal. After his first trial, the defendant appealed asserting one trial error, the trial judge's refusal to permit defense counsel, on cross-examination, to ask the complainant "[w]hether or not she has prior to this made accusations that other men have raped her, and how many times . . . she [had] made [such] accusations." *Bohannon, supra* at 92. We noted that defense counsel had made an offer of proof, by way of hospital records, that the complainant had made prior unsubstantiated and false accusations. *Id.* at 92-93. Recognizing that the complainant's credibility was "[t]he central focus of the trial," *id.* at 92, we held that the limitation on cross-examination violated the defendant's right to present a full defense, *id.* at 94 and 95. His case was remanded for a new trial, *id.* at 96.

The Commonwealth sought, thirteen months prior to this trial, by means of the uniform act to secure the attendance of out-of-State witnesses (Uniform Act), to secure the presence of the complainant, who had moved to Florida. G. L.

c. 233, § 13B. On February 9, 1979, a Florida judge refused to compel her attendance, ruling that it would be an "undue hardship" on the witness to return to Massachusetts. After the Florida judge's ruling, the Commonwealth moved that she be declared an unavailable witness and that the Commonwealth be allowed to use the stenographic transcript of her testimony from the first trial. The motion judge in late February, 1979, ruled the complainant was an unavailable witness but denied the Commonwealth's motion to use the transcript from the first trial.[4]

Almost eight months later, after the Commonwealth had secured a tape cassette of the complainant's probable cause testimony,[5] it moved by way of a motion in limine to have the tape cassette admitted in evidence at the defendant's second trial. The Commonwealth stated that the complainant was still unavailable and, at the probable cause hearing, the defendant was represented by counsel who cross-examined the victim. The defendant moved to suppress the cassette, alleging inter alia that the complainant was not an unavailable witness, that the tape was unclear,

---

[4] The motion judge found and ruled that "the Commonwealth offers to stipulate that the extensive offer of proof made during the first trial might now be admitted as the answers the witness would have in fact given had she been allowed to answer the questions. This, however, is a pale substitute for the right of actual confrontation through cross-examination. Moreover, as there appears to be some independent evidence of these allegedly false accusations, see *Commonwealth vs. Bohannon,* [376 Mass. at 95], the most elementary trial tactics suggest that follow-up examination will be required upon the witness's answers to the initially proffered questions. That is, if the witness admits the prior accusations and their falsity, further examination is warranted to directly attack her credibility in the present instance. On the other hand, if she denies the prior instances, the independent evidence may be used to impeach her. In any event, simply admitting the offer of proof as evidence will not afford the defendants the advantage derived from a searching cross-examination in this area. As the defendants had no opportunity to conduct such a cross-examination at the first trial, the transcript of the witness's testimony therein may not be admitted."

[5] The cassette recording was made by the attorney for the juvenile defendant and was in the possession of the defense counsel. The cassette was delivered to the prosecutor pursuant to an order of the court.

inaudible, and confusing, and that its admission would vio-
late the defendant's right of confrontation. The second mo-
tion judge allowed the Commonwealth's motion and denied
the defendant's motion.

The second motion judge "adopt[ed]" the prior motion
judge's ruling on unavailability, which had been made some
eight months earlier. The only additional evidence heard
on the issue of unavailability at this time was testimony
from an assistant district attorney who stated that he could
not reach the complainant by telephone during the preced-
ing week.[6] The judge, apparently relying again on the prior
motion judge's memorandum, further found that the de-
fendant had an adequate opportunity to cross-examine the
complainant. He concluded that "having heard a sufficient
playing of the tapes . . . [they] are sufficiently reliable and

---

[6] Defense counsel examined the prosecutor as follows:

DEFENSE COUNSEL: "Have you had any contact with [complainant] in
the last nine months?"

THE PROSECUTOR: "I have called [complainant] every day last week try-
ing to get an answer, the answer to our question."

DEFENSE COUNSEL: "You have not talked to her personally?"

THE PROSECUTOR: "No, sir."

DEFENSE COUNSEL: "Have you talked to the family?"

THE PROSECUTOR: "No. No answer. And I have called as early as
8 o'clock in the morning and as late as 5:30."

DEFENSE COUNSEL: "Have you or any of your staff gone to Florida to
talk to this girl?"

THE PROSECUTOR: "No, sir."

DEFENSE COUNSEL: "Explain the situation, that there is a retrial?"

THE PROSECUTOR: "No, sir. Not in person. I have spoken to her on the
phone."

DEFENSE COUNSEL: "I'm talking about in person."

THE PROSECUTOR: "No, sir."

DEFENSE COUNSEL: "Or to her mother in person?"

THE PROSECUTOR: "No, sir."

DEFENSE COUNSEL: "And your last contact was something over nine
months ago."

THE PROSECUTOR: "That is correct. February 9th, 1979 would be the
last time."

DEFENSE COUNSEL: ". . . 9 months. And you made no effort between
that time other than when this hearing came up within the last week to
make even an effort to find her?"

THE PROSECUTOR: "That is correct."

comprehensible . . . [so] that the jury could decide the issue of credibility." The judge, in fact, listened to a limited portion of the probable cause tape and, in agreement with counsel, decided that he had heard enough to make a ruling on its admissibility.

The defendant contends that the admission in evidence at his trial of the complainant's probable cause testimony violated his Federal and State constitutional rights to confront the witness against him.[7] He argues that the complainant was not "unavailable," according to State law, nor was the witness shown to be, in fact, unavailable at the time of trial. Further, the defendant contends that the prior reported testimony lacked the necessary reliability to sanction its admission in evidence.

1. *Prior reported testimony.* Among issues raised by the claim of the erroneous admission of prior reported testimony, is one of first impression in this Commonwealth: Whether, in a criminal trial, a witness is "unavailable" simply because the Commonwealth unsuccessfully resorted, at some time, to the procedures set forth by the Uniform Act to secure attendance of the witness at trial. We set general guidelines for the admission of such testimony, while noting that the answer to the question will always be peculiar to the particular facts of a given case.

The common law of this jurisdiction recognizes that prior reported testimony may be admitted in evidence even though such testimony "has some superficial resemblance to

---

[7] The confrontation clause of the Sixth Amendment to the United States Constitution, applied to State proceedings through the Fourteenth Amendment in *Pointer* v. *Texas,* 380 U.S. 400, 403 (1965), secures to a defendant in a criminal case the right "to be confronted with the witnesses against him."

Article 12 of the Massachusetts Declaration of Rights provides that every person held to answer for a crime has a right "to meet the witnesses against him *face to face*" (emphasis supplied). This constitutional right is also reaffirmed in G. L. c. 263, § 5. Although the defendant relies on both Federal and State law, he makes no argument as to whether the language of art. 12 and of G. L. c. 263, § 5, imposes a stricter standard than that of the Sixth and Fourteenth Amendments. Accordingly, we do not reach this question.

hearsay . . . ." See *Commonwealth* v. *Gallo,* 275 Mass. 320, 328-329 (1931). Cf. Fed. R. Evid. 804(b)(1). Prior reported testimony "is admitted when the witness is unavailable." *Commonwealth* v. *Canon,* 373 Mass. 494, 499 (1977), cert. denied, 435 U.S. 933 (1978). The foundation of this rule rests on an adequate showing of both necessity and of an adequate opportunity for cross-examination by the party against whom it is offered. *Id.* at 499-500. Put otherwise, prior reported testimony is admissible only when it is established that (a) the witness is "unavailable" to testify at the trial, and (b) the prior testimony is reliable. *Ohio* v. *Roberts,* 448 U.S. 56, 65 (1980).

Although the admission of prior reported testimony is not necessarily excluded by application of the hearsay rule, a judge in a criminal case must take into account the applicability and the impact of a criminal defendant's confrontation right before admitting such evidence. This is so because the confrontation right extends beyond the contours of the hearsay rule. See, e.g., *California* v. *Green,* 399 U.S. 149, 155-156 (1970) (confrontation clause is more than codification of common law hearsay rules and exceptions); *United States* v. *Roberts,* 583 F.2d 1173, 1175-1176 (10th Cir. 1978), cert. denied, 439 U.S. 1080 (1979); *United States* v. *Rogers,* 549 F.2d 490, 498-499 (8th Cir. 1976), cert. denied, 431 U.S. 918 (1977). See also Advisory Committee Notes, Fed. R. Evid., Art. VIII, Hearsay (hearsay exceptions "stated in terms of exemption from . . . hearsay rule, rather than in positive terms of admissibility" because of confrontation and due process considerations). "[T]he circumstances in which the former testimony was given must be examined to ascertain whether the testimony was given in compliance with the requisites of the confrontation clause." *Commonwealth* v. *Canon, supra* at 511 (Liacos, J., dissenting). The defendant's right to confront witnesses against him is essential to a fair trial and is long recognized as a requirement of due process. See *Chambers* v. *Mississippi,* 410 U.S. 284, 294 (1973). As noted earlier, however, we have recognized that the necessities of the case and the attainment of justice

justify admission of hearsay against a criminal defendant in some cases. See *Gallo, supra* at 330. See also *Chambers, supra* at 295 (competing interests, if "closely examined" may warrant dispensing with confrontation at trial). We turn now to consider the aspect of "necessity" which is established by an adequate showing of the "unavailability" of the witness at the time of the trial. In so doing, we bear in mind the fundamental precept that "the prosecution bears the burden of establishing this predicate." *Ohio* v. *Roberts, supra* at 75.

a. *Unavailability.* We have specifically authorized the introduction at a criminal trial of testimony given at a probable cause hearing when the defendant had an opportunity to cross-examine fully the witness at a probable cause hearing, the witness was unavailable at trial because of death or other legally sufficient reason, and the testimony could be substantially reproduced in all material particulars. See *Commonwealth* v. *Canon, supra; Commonwealth* v. *Mustone,* 353 Mass. 490, 494 (1968). See also *Mancusi* v. *Stubbs,* 408 U.S. 204, 213-214 (1972); *Commonwealth* v. *Clark,* 363 Mass. 467, 470-471 (1973); *Commonwealth* v. *Gallo, supra* at 328-335. Our position is consistent with a recent United States Supreme Court case that ruled on the admissibility at a later criminal trial of a witness's preliminary hearing testimony, where the prosecutor had proved by way of a voir dire that the witness was unavailable to testify at trial. In discussing the constitutional issues presented, the Court stated: "The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. See *Mancusi* v. *Stubbs,* 408 U.S. 204 (1972); *Barber* v. *Page,* 390 U.S. 719 (1968). See also *Motes* v. *United States,* 178 U.S. 458 (1900); *California* v. *Green,*

399 U.S., at 161-162, 165, 167, n.16 [1970]. The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' *Snyder* v. *Massachusetts*, 291 U.S., at 107 [1934]." *Ohio* v. *Roberts, supra* at 65.

In *Barber* v. *Page*, 390 U.S. 719, 724-725 (1968), the State had introduced testimony given by a witness at a preliminary hearing. The witness was in Federal prison at the time of trial, and the State made no effort to secure his attendance. The Court held that "a witness is not 'unavailable' . . . unless the prosecutorial authorities have made a good-faith effort to obtain his presence *at trial*" (emphasis supplied). See *Green, supra* at 189 n.22 (Harlan, J., concurring) (State should make reasonable efforts to produce available witnesses). The Court remarked in a footnote in *Barber* that resort to the Uniform Act is a proper means by which to ensure an out-of-State witness's testimony at trial. *Id.* at 723 n.4. As a general rule, we agree that resort to the Uniform Act and a subsequent failure to secure the witness's attendance may be a basis for a finding of "unavailability." See Proposed Mass. R. Evid. 804 (g) (5) (witness is unavailable for hearsay purposes if attendance cannot be procured by process). Cf. Mass. R. Crim. P. 35 (g) (5), 378 Mass. 907 (1979). We find no merit in defense counsel's contention that our prior case law forbids this holding.[8]

---

[8] *Ibanez* v. *Winston*, 222 Mass. 129 (1915), is inapposite. In *Ibanez*, "[i]t appear[ed], without more, that the former witness was last heard from in Spain. . . . There was no testimony or offer of testimony of any attempt to produce or induce the return of the witness, to take his deposition or to excuse such non-action." *Id.* at 130. Any effort to secure the witness's presence was sorely lacking in *Ibanez*. Such is not the case here. The facts in *Vigoda* v. *Barton*, 348 Mass. 478 (1965), are also readily distinguishable. We further note that *Commonwealth* v. *DiPietro*, 373 Mass. 369, 381 (1977), intimated no opinion on this issue. See Proposed Mass. R. Evid. 804 (a) (taking broad view of "unavailability" and going beyond prior case law); P.J. Liacos, Massachusetts Evidence 274 (5th ed. 1981).

Whether mere resort to the procedures of the Uniform Act some thirteen months prior to the trial is an adequate showing of unavailability, is, however, another question.[9]

The Commonwealth appears to argue that, once the complainant is shown to be unavailable based upon its unsuccessful use of the Uniform Act, this is sufficient to establish unavailability at the time of the trial. It is true that cases and commentators, principally relying on *Barber* v. *Page, supra,* have reasoned generally that resort to the Uniform Act, coupled with a good faith effort to secure the witness's presence at trial, satisfies the constitutional requirement of unavailability for admission of prior reported testimony at a later trial. See, e.g., *State* v. *Hills,* 379 So. 2d 740, 744 (La. 1980); *Brooks* v. *State,* 35 Md. App. 461, 469-470 (1977). Cf. *State* v. *Mann,* 87 N.M. 427, 429-430 (1975); *State* v. *LaFernier,* 44 Wis. 2d 440 (1969). See also McCormick, Evidence § 253, at 610 (2d ed. 1972). In the instant case, however, the prosecutor failed to carry the burden of proving that the witness was unavailable to testify *at the time of trial.* See *Ohio* v. *Roberts, supra* at 74-75 (prosecution bears burden of establishing unavailability of witness despite good faith effort); *People* v. *Rogers,* 79 Ill. App. 3d 745 (1979). We conclude the second motion judge abused his discretion in relying on a finding of "unavailability" made by another judge almost eight months prior. See, e.g., *Martinez* v. *State,* 611 P.2d 831, 837 (Wyo. 1980) (whether witness "unavailable" within trial judge's discretion). The trial judge likewise erred in relying on the Florida judge's ruling, thirteen months prior to trial, that it would be an "undue hardship" to compel the attendance of the complainant at trial. The pertinent question was whether the

---

[9] We are aware that the defendant had sought interlocutory relief from a single justice of this court under G. L. c. 211, § 3, after the ruling of the second motion judge. While the single justice denied interlocutory relief, it appears that the single justice urged that further efforts be made by the prosecution to determine the availability of the witness. This record is barren of any showing, however, of the factual situation relating to the availability of the witness either at that time or at the time the trial commenced.

complainant was available to testify in person at the time her former testimony was admitted in evidence. See *Ohio v. Roberts, supra* (prosecutor proved at trial, by way of voir dire, that witness unavailable to testify).

In *Commonwealth v. Clark, supra* at 470-471, we held that prior reported testimony was admissible based on proof that "shortly before trial" the Commonwealth had mounted a "diligent search" for a witness who was missing at the time of trial. When former testimony is sought to be offered against the accused, the degree of "good faith" and due diligence is greater than that required in other situations. McCormick, *supra* at 613. See *Commonwealth v. Canon, supra* at 507 (Liacos, J., dissenting) (unavailability of witness must be "diligently" established). Accord, *State v. Scholz,* 432 A.2d 763 (Me. 1981); *People v. Rogers, supra.* Cf. *United States v. Mann,* 590 F.2d 361, 367 (1st Cir. 1978) (government must make vigorous attempt to procure presence of witness); *Gorum v. Craven,* 465 F.2d 443, 445 (9th Cir. 1972) (defendant not required to resort to Uniform Act to secure attendance of prosecution witness). "Only by demanding rigorous compliance with the evidentiary definitions of 'unavailability as a witness' for the purpose of invoking the former testimony exception to the hearsay rule can we adequately insure that this fundamental constitutional guarantee is preserved for the accused." *Scholz, supra* at 767. See *Valenzuela v. Griffin,* 654 F.2d 707, 710 (10th Cir. 1981) (per curiam) (subpoena served three months prior to trial; held, that "prosecution [must] show what efforts have been made closer to the trial date"). See also *Newton v. State,* 403 P.2d 913 (Okla. Crim. App. 1965) (due diligence implies more than partial notice and last minute activities).

The complainant's testimony was vital to the Commonwealth's case, and her credibility was a central issue. We have described her testimony at the first trial as "inconsistent and confused," and at variance with her testimony at the probable cause hearing. *Bohannon, supra* at 91. In these circumstances, reliance on her status over one year

prior to trial is inadequate to establish her "unavailability" at the time of trial.[10]

We turn to the issue whether the 1974 probable cause testimony bore sufficient indicia of reliability to sanction its use at trial for the reason that this issue may arise in the event of another trial.

b. *Indicia of reliability.* Once the hearsay declarant is shown to be unavailable, the party seeking to introduce the prior reported testimony must then show that the evidence is reliable. "The decisions of [the Supreme] Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.'" *Dutton* v. *Evans,* 400 U.S. 74, 89 (1970) (plurality), quoting from *California* v. *Green,* 399 U.S. at 161. Whether the trier of fact has a basis for evaluating the truth of the prior statement necessarily requires a case-by-case analysis. See *Chipman* v. *Mercer,* 628 F.2d 528, 530 (9th Cir. 1980); *United States* v. *Rogers,* 549 F.2d 490, 501-502 (8th Cir. 1976), cert. denied, 431 U.S. 918 (1977).

There are two aspects of reliability that might be considered. First, Was the testimony shown to be reliable when given? Second, Is the evidence of that testimony sufficiently accurate? Former testimony, as an exception to the hearsay rule, has certain elements of reliability such as the oath and the solemnity of the occasion in which the testimony is given. McCormick, *supra* § 254, at 615. Further, in the case of transcribed testimony, reliability is ensured by the accuracy of the reproduction of the spoken words. *Id.*[11] As

---

[10] We note also that it was established at the hearing on the motion for a new trial that the witness came into the Commonwealth within two weeks after the defendant's conviction. She then left the jurisdiction when she became aware that she might be called as a witness in the hearing on the motion for a new trial.

[11] The defendant raised the second issue at the motion hearing, but does not argue it on this appeal. We consider it waived.

a general rule, "where a witness has testified in a former trial of substantially the same issues between the parties . . . his testimony at the former trial is admissible [as an exception to the hearsay rule] if a witness can be found who can state all his testimony with substantial accuracy." P.J. Liacos, Massachusetts Evidence 272 (5th ed. 1981). Thus, the reliability of the evidence is ensured by the circumstances surrounding the giving of the testimony in the first instance and the manner in which the evidence is preserved and restated at the later trial. See *Commonwealth* v. *Mustone*, 353 Mass. 490, 494 (1968); *Commonwealth* v. *Richards*, 18 Pick. 434, 438-440 (1837); *Scott* v. *State*, 272 Ark. 88, 94-95 (1981); *Dilworth* v. *State*, 611 P.2d 256, 259 (Okla. Crim. 1980). Compare *United States* v. *McKeever*, 169 F. Supp. 426, 430-431 (S.D.N.Y. 1958) (discussing threshold issues of accuracy and completeness as prerequisites for admitting tape recordings in evidence).

As a matter of constitutional law, the first component of the required "indicia of reliability" is satisfied when the prior testimony was given under oath, when the defendant was represented by counsel, when counsel could and did cross-examine the witness,[12] and when the issue at both judicial proceedings is similar. *Mancusi* v. *Stubbs*, 408 U.S. 204, 216 (1972).

The defendant was represented by counsel at the probable cause proceeding and did in fact cross-examine the complainant while she was under oath. The prior cross-examination of a now unavailable witness before a judicial tribunal provides substantial compliance with the purposes behind the confrontation clause, see, e.g., *Ohio* v. *Roberts*, 448 U.S. at

---

[12] The Supreme Court suggested in *California* v. *Green*, 399 U.S. 149, 165 (1970), that mere opportunity to cross-examine a witness at a prior judicial proceeding would render the reported testimony admissible. Whether this suggestion was merely a dictum is a question left unanswered in *Ohio* v. *Roberts*, 448 U.S. 56, 70 (1980), along with the issue whether de minimis questioning would be sufficient for confrontation purposes. But see *Commonwealth* v. *Canon*, 373 Mass. 494, 500 (1977), cert. denied, 435 U.S. 933 (1978) (actual cross-examination at prior trial not required; opportunity to cross-examine sufficient).

71; *Douglas* v. *Alabama,* 380 U.S. 415, 418 (1965), even though some demeanor evidence relevant to resolving the issue of credibility is forever lost. See *Green, supra* at 154.

The defendant, however, contends that the opportunity to cross-examine the complainant at the 1974 probable cause hearing was constitutionally inadequate based on the holding in *Commonwealth* v. *Bohannon,* 376 Mass. 90 (1978). The defendant was granted a new trial in *Bohannon* because the trial judge excluded the following questions: "Whether or not she has prior to this made accusations that other men have raped her, and how many times, if the answer is yes, she has made these accusations." *Bohannon, supra* at 92. "[T]he exclusion of the defendant's proposed questions violated his right to present his defense fully." *Id.* at 95.

The defendant admits that the complainant was cross-examined at the probable cause hearing by counsel for a juvenile codefendant[13] as to numerous prior complaints of rape or sexual molestation which she had made against various persons. The defendant argues, however, the lack of an opportunity to show the falsity of the prior accusations and complaints makes the cross-examination constitutionally infirm. We fail to see, however, how counsel was significantly limited in any way in the scope or nature of his cross-examination[14] at the probable cause hearing. There was no preclusive ruling by the District Court judge similar to that made by the judge at the first trial. For example, when the complainant denied a prior accusation of sexual molestation, counsel made use of certain hospital records in order to refresh the witness's recollection. We conclude, therefore,

---

[13] Although the relevant cross-examination at the probable cause hearing of the complainant was carried on by counsel for a juvenile who was involved in the incident, this is of no constitutional significance. See *Ohio* v. *Roberts,* 448 U.S. 56, 72 (1980).

[14] The defendant contends he would have had an excellent chance of establishing the falsity of at least one rape accusation, and perhaps another, by way of certain hospital records. The hospital records referred to are apparently the same ones offered in the instant case for the same purpose. See discussion in text, *infra*.

that the defendant had an adequate opportunity to examine the complainant at the prior hearing and, in fact, exercised that right. This, we think, was constitutionally adequate.

2. *Other assignments of error.* The defendant contends that the trial judge erred in excluding certain hospital records and hearsay statements of the complainant's mother that tended to show the falsity of the complainant's prior accusations of rape. We consider these claims because the issue may arise in the event of another trial. The defendant argues that the rule established in his first appeal, see *Commonwealth* v. *Bohannon, supra,* required the trial judge to admit the hospital records; and secondly, that the trial judge violated his Fourteenth Amendment right to due process of law by excluding other highly trustworthy hearsay statements, see *Chambers* v. *Mississippi,* 410 U.S. 284 (1973). We disagree.

a. *Hospital records.* We held in *Commonwealth* v. *Bohannon, supra,* that extrinsic evidence to prove prior false allegations of rape was relevant and admissible on the issue of consent when the witness denies the same under oath. This was not a holding that the hospital records in issue were admissible despite their inadmissibility under the hearsay rule. The defendant offered the hospital records under G. L. c. 233, § 79, as amended through St. 1974, c. 225, which provides in pertinent part: "Records kept by hospitals . . . under [G. L. c. 111, § 70] shall be admissible . . . as evidence . . . so far as such records relate to the treatment and medical history of such cases." "This statute in effect provides an exception to the hearsay rule which allows hospital records to be admitted to prove the truth of the facts contained therein, in so far as those facts relate to treatment and medical history." *Bouchie* v. *Murray,* 376 Mass. 524, 527 (1978), citing *Commonwealth* v. *Copeland,* 375 Mass. 438, 441-442 (1978). The statute was "enacted primarily to relieve the physicians and nurses of public hospitals from the hardship and inconvenience of attending court as witnesses to facts which ordinarily would be found recorded in the hospital books." *Leonard* v. *Boston Elevated Ry.,* 234 Mass. 480, 482 (1920).

The judge, in a hearing on the motion to admit the hospital records, found "that the records themselves are extremely sketchy, vague, inaccurate as to where the information came from, [and] contained hearsay piled upon hearsay." The judge also found that, most of the time, there was no indication who wrote the statement or what their status was, and that the records contained "unsupported opinions by experts, by non-experts, with all sorts of hearsay and rumor." We agree with the judge's implicit conclusion that the records were unreliable hearsay. "What gives the hospital records presumptive reliability is the fact that persons treating the patient rely on this information. However, the force of the presumption of reliability underlying the statute diminishes substantially where the statements contained in the hospital record derive neither from the personal knowledge of the physician nor from the patient himself, and may not have been made by the third person for the purpose of medical diagnosis or treatment." *Bouchie, supra* at 529. The defendant did not argue in the trial court, nor has he explained on appeal, how the excluded statements were related to the complainant's diagnosis or treatment and would be thus admissible in evidence. We are of the opinion that the judge did not abuse his discretion in excluding the hospital records, which posed problems of multiple hearsay. Compare *Commonwealth* v. *Ennis*, 2 Mass. App. Ct. 864 (1974).

b. *Hearsay statement of complainant's mother.* The defendant sought at trial to introduce the testimony of counsel for a former codefendant, who had interviewed the complainant's mother in Florida about a month prior to trial. This testimony, offered for the truth of the matter asserted therein, consisted of extrajudicial statements of the complainant's mother that tended to show the falsity of one of the complainant's prior accusations of rape. The statements were substantially corroborated by the hospital records. While admitting that the proffered testimony was purely hearsay, the defendant argues that the trial judge erred in excluding the testimony, based on *Chambers* v.

*Mississippi, supra.* We think, however, that the defendant's reliance on *Chambers* is misplaced.

In *Chambers,* the Supreme Court held that, on the facts and circumstances of the particular case, the defendant was denied a fair trial in accordance with the due process clause of the Fourteenth Amendment. *Chambers, supra* at 303. Chambers was denied a fair trial because a peculiar combination of the State's evidentiary rules prevented him from presenting his defense. The trial judge's rulings had denied Chambers the right to cross-examine a witness who gave damaging testimony against him, *id.* at 297-298, and prohibited him from introducing highly reliable hearsay statements which established that another person had admitted three times to the commission of the crime for which Chambers was on trial, *id.* at 298. In these circumstances, evidentiary rulings could not be mechanistically applied to defeat the ends of justice. *Id.* at 297-298.

In the instant case the excluded hearsay statements, although not per se exculpatory, were important to the defense. As the only contested issue was that of consent, credibility was a central issue. Evidence tending to prove the falsity of one of the complainant's prior rape accusations was thus central to the defendant's case. The hearsay statements offered here, however, unlike those offered in *Chambers,* were not demonstrated to be statements made "under circumstances that provided considerable assurance of their reliability." *Chambers, supra* at 300. Additionally, another factor takes this case out of the scope of the *Chambers* decision. That factor was the defendant's ability to secure the necessary evidence by resort to the Rules of Criminal Procedure. The defendant could have preserved the mother's testimony by way of deposition and introduced it at trial.[15] See Mass. R. Crim. P. 35, 378 Mass. 906 (1979).

---

[15] The defendant had resorted to the Uniform Act to secure the attendance of out-of-State witnesses, G. L. c. 233, §§ 13A-13D, to secure the mother's attendance at trial. This would have satisfied the requirement of unavailability at trial according to the rules practice. See Mass. R. Crim. P. 35 (g) (5), 378 Mass. 907 (1979).

Cf. Fed. R. Evid. 804(a)(5). He made no such effort. We conclude that in the circumstances of this case, where the means were available to introduce the evidence in admissible form, the defendant cannot rely on *Chambers* for its admission.

3. *Disposition.* We reverse the judgments on all the indictments, set aside the verdicts, and remand the cases to the Superior Court for a retrial in accordance with this opinion.

*So ordered.*