NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-879

COMMONWEALTH

vs.

WILFREDO LOPEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of two counts of indecent assault and battery on a child under fourteen in violation of G. L. c. 265, § 13B.[1]  The defendant appeals, arguing that several erroneous rulings and statements in the prosecutor's closing argument warrant reversal.  Discerning no error, we affirm.

Background.  Based on the Commonwealth's evidence, the jury could have found the following facts.  In December 2017, the victim was thirteen years old and living with her mother,

---

[1] The defendant was acquitted of a third count of indecent assault and battery on a child under fourteen; one count of assault and battery in violation of G. L. c. 265, § 13A (a); and one count of witness intimidation in violation of G. L. c. 268, § 13B.

brother, younger sister, and the defendant, who was her stepfather. One night, the defendant repeatedly asked the victim, both verbally and via text message, to enter his bedroom and lie down with him and her younger sister to watch a movie. The victim's mother was not home at the time. The victim initially did not want to watch the movie, but after the defendant offered her money, the victim acquiesced.

The defendant was laying in the middle of the bed with the victim's sister on one side of him and the victim on the other. As the victim was laying on her side with her back to the defendant, she felt the defendant rub his hand on her shorts over her buttocks, reach inside her shirt and bra, and touch her breasts. When the victim tried to move away from the defendant, he prevented her from getting off the bed by pulling her back. The victim managed to get off the bed and leave the bedroom. Later, the defendant told the victim not to tell anyone and kissed her on the head and apologized.

In February 2018, the victim informed her mother that the defendant sexually assaulted her. The victim testified that she overheard the defendant respond to her mother confronting him with the accusation by stating, "the devil made [me] do it."[2]

---

[2] The testimony of the victim's mother and a Department of Children and Families (DCF) social worker as to the mother's confrontation of the defendant differ from the victim's

2

Discussion. 1. Evidentiary rulings. We review the trial judge's rulings for an abuse of discretion, as "[w]e do not disturb a judge's decision to admit [or exclude] evidence absent an abuse of discretion or other legal error." Commonwealth v. Souza, 492 Mass. 615, 626 (2023), quoting Zucco v. Kane, 439 Mass. 503, 507 (2003).

a. Victim's other sexual assault allegations. The defendant argues that the victim's allegations of sexual assault against two of her peers were admissible as evidence of other false accusations, and thus the judge abused his discretion by not allowing the defendant to introduce this evidence.[3] The

---

testimony. The mother testified that after she confronted the defendant about the victim's letter, the defendant told the mother that, "if he touched her for any reason, it was by mistake 'cause they're always playing around and goofing around." The DCF social worker testified to a conversation with the mother wherein the mother said that the defendant, in response to the victim's allegations, had "admitted to putting his hand on [the victim's] stomach and on her breast," thinking at first the victim was his wife, "and then realized it was not her." The judge instructed the jury that the DCF case worker's testimony was admitted solely for impeachment purposes.

[3] After reporting the defendant's conduct to her mother in February 2018, the victim separately accused two male peers of sexually assaulting her while she participated in DCF's stabilization assessment and rapid reunification (STARR) service. In March of 2018, the victim reported to staff at STARR that she had been sexually assaulted by a fellow resident who asked her to perform oral sex. According to a DCF worker, the victim initially denied that the assault occurred, but later stated the assault had taken place. In October of 2019, the victim left the STARR program premises with two other residents, and after returning to the program, she reported that she had

3

defense alternatively argues that the allegations were admissible to show a pattern of conduct, specifically, that the victim would contrive allegations of sexual assault to deflect attention from her misbehavior that occurred when she participated in a DCF program. We are not persuaded.

With limited exceptions, evidence of a victim's sexual conduct is not admissible. See Commonwealth v. Harris, 443 Mass. 714, 721 (2005), quoting G. L. c. 233, § 21B ("The statute precludes admission of evidence of a victim's 'reputation' with respect to 'sexual conduct,' as well as 'evidence of specific instances of a victim's sexual conduct'"). One such exception allows admission of evidence of other accusations, when such accusations are "of the specific crime which is the subject of the trial" and might "seriously damage[] the complainant's credibility." Commonwealth v. Bohannon, 376 Mass. 90, 95 (1978), S.C., 385 Mass. 733 (1982). Before this exception may apply, the defendant must make an "offer of proof," not only that other allegations had been made but also that those allegations were false. Id.

Here, the defendant failed to make an adequate offer of proof that either of the victim's other two allegations were

_____

been sexually assaulted by the male resident who had accompanied her.

4

false, which is required under Bohannon, 376 Mass. at 95. The defendant asserts that the falsity of the victim's other two accusations was sufficiently established by (1) inconsistent reports of the victim, who initially denied that the alleged perpetrator had sexually assaulted her in March of 2018, (2) a lack of charges filed in relation to the other allegations, and (3) that the victim made accusations against multiple people. That the victim provided inconsistent accounts of the March 2018 incident does not prove that the victim was lying. See Commonwealth v. Crowe, 21 Mass. App. Ct. 456, 477, cert. denied sub nom., Pirrotta v. Massachusetts, 479 Mass. 838 (1986), quoting Commonwealth v. McGahee, 393 Mass. 743, 750 (1985) ("Inconsistencies in the victim's testimony 'do not render the testimony legally insufficient'"). Further, "that [a] victim failed to pursue a claim is not evidence that the claim was falsely made." Commonwealth v. Hrycenko, 417 Mass. 309, 319 (1994).

Finally, that a victim makes separate rape allegations, without concrete evidence to support a claim that those allegations were false, does not independently suggest they were false. See Commonwealth v. Wise, 39 Mass. App. Ct. 922, 922-923 (1995) ("To open the gate to cross-examination, the evidence of falsity of an accusation must be solid, as when the accusing

witness has recanted the other allegation").  Therefore, there was not sufficient evidence demonstrating the victim's previous allegations were false that would warrant the application of Bohannon.

As to the defendant's alternative argument, the facts here differ significantly from the victim's other allegations to allow for admission of the evidence as proof of "a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive."  Commonwealth v. Helfant, 398 Mass. 214, 224 (1986).  The victim's other allegations were directed at peers, while this allegation was directed at an adult family member.  Additionally, there is no indication that the victim was concerned about getting in trouble when she reported the other assaults.  The judge did not abuse his discretion when he concluded that the other allegations were not similar enough to the current case to be admissible as evidence of a pattern or motive to lie.[4]  Cf. Commonwealth v. King, 387 Mass. 464, 472 (1982) (admitting prior bad acts as proof of "common pattern" where "the uncharged conduct is so closely

_____

[4] The defendant also argues that the judge did not fully consider the issue regarding the admissibility of other accusations.  Because we do not agree that the judge erroneously weighed the facts relevant to the issue, we discern no error. See Souza, 492 Mass. at 626.

6

related in time, place, age, family relationship of the victims, and form" of behavior in question).

b. <u>Victim's behavior at school</u>.  The defendant asserts that the judge erroneously limited information regarding the victim's alleged misconduct at school to a single day, and that the defense was entitled to cross-examine the victim regarding her behavior over a longer period of time for the purpose of showing bias.  The defendant argues that, in preventing this line of questioning due to lack of relevance, the judge prevented him from putting on a full defense.

Because the trial judge limited reference only to "specific incidents"[5] while still allowing testimony that the victim was "generally having a difficult time," we conclude that the issue of the victim's behavior at school was sufficiently aired, and there was no abuse of discretion.  See <u>Commonwealth</u> v. <u>Avalos</u>, 454 Mass. 1, 7-8 (2009).  This is further supported by the defense's acquiescence and agreement to keep evidence of supposedly bad behavior "to general terms" after the judge explained he was not allowing the mention of "any specific

_____

[5] The defendant sought to introduce evidence that the victim got in trouble for "vaping" and "swearing at her teachers" at school, arguing that the victim was "in the hallway raising some issues, swearing at the teachers.  She[] [was] taken into a room.  She[] [was] told that this is not proper conduct.  And, then, she [made] this complaint" against the defendant.

7

acts," as well as the fact that both the victim and her mother testified that the victim was "always" getting in trouble at school, including around the time of the December 2017 assaults.

c. Victim's letter to defendant. The defendant argues that the specific content of a letter that the victim wrote to the defendant was admissible to show the victim's "present friendliness" toward the defendant after the alleged assaults. See Mass. G. Evid. § 803(3)(B)(i) (2021).[6] The letter contained statements by the victim praising and thanking the defendant, including, "Thank you for picking my mom as your wife," "since day one you have always treated me with respect," and "even tho [sic] I don't say it I do love you." The victim asserted that she wrote this letter prior to the December 2017 incident. The victim's mother said the defendant showed her this letter around his birthday, which was after the December 2017 incident; thus, the defendant argues this letter is probative of the victim's feelings toward the defendant at the time of the incident.[7]

---

[6] Statements that might otherwise be excluded at trial as hearsay were admissible at the time of the defendant's trial if they were indicative of a person's "present friendliness, hostility, intent, knowledge, fear, or other mental condition." Mass. G. Evid. § 803(3)(B)(i). The current version is not materially different.

[7] In response to this discrepancy, the judge allowed the defendant to present the letter to the victim at trial, but stated that "if [the victim] denies that she wrote that after the alleged incident, but wrote it before, then . . . it's not

8

Although the judge sustained the Commonwealth's objection to the victim reading the letter, he did allow the defendant to ask the victim to confirm that the letter was to the defendant and contained information "that's very positive about [the defendant]." Additionally, the victim testified that she had not written the letter within the timeframe of the crimes of which the defendant was convicted, which minimizes its relevance as to the grounds for which the defendant sought to introduce it. Finally, defense counsel stated at sidebar that he did not "plan on" asking the victim about the contents of the letter. Therefore, we cannot conclude that the trial judge abused his discretion in preventing the specific contents of the letter from being read during trial. See Commonwealth v. Garcia, 470 Mass. 24, 35-36 (2014), quoting Avalos, 454 Mass. at 7 (no abuse of discretion in judge's decision to deny admission of evidence where he did not "bar all inquiry into the subject" at issue).

2. Testimony of victim's mother. The defendant next argues that the Commonwealth called the victim's mother for an impermissible purpose, which was impeaching the mother.

---

relevant." Of course, the victim's mother's testimony about when she saw the letter does not contradict when the victim said she wrote it (before the incident in question). Nor does it establish the earliest that the letter was written.

9

Generally, it is permissible for the Commonwealth to impeach its own witness. See Commonwealth v. Reddick, 372 Mass. 460, 464 (1977), S.C., 381 Mass. 398 (1980); G. L. c. 233, § 23. However, the Commonwealth is not permitted to call "a witness whom [it] knows beforehand will offer no testimony relevant to an issue at trial solely for the purpose of impeaching that witness with prior inconsistent statements that would otherwise be inadmissible." Commonwealth v. McAfee, 430 Mass. 483, 489-490 (1999).

Here, the defendant asserts that because the Commonwealth disclosed in a hearing prior to trial that the "purpose of [the mother] testifying" was to address admissions the defendant allegedly made to her and that the mother reported to DCF, the mother was clearly called for impeachment purposes alone. However, there was no mention at this hearing that the Commonwealth affirmatively expected the mother to deny having heard or reporting the admissions at issue. At that same hearing, the Commonwealth also asserted that it would call the DCF worker in question to testify should the mother deny having heard or reported the defendant's admissions. Although the defendant argues that this is sufficient to show the Commonwealth meant to call the mother simply to contradict her, we are not persuaded that uncertainty regarding the mother's

10

testimony is indicative of the Commonwealth calling the mother in bad faith.  See Commonwealth v. Thomas, 429 Mass. 146, 156-157 (1999) (no impropriety in Commonwealth calling witness to establish potential rebuttal).

Further, the defendant argues that the Commonwealth's direct examination of the mother did not contain any probative questions that were not related to her alleged conversation with the defendant.  This argument is unavailing.  The mother's testimony about her family and household arrangements, the length of her relationship with the defendant, that she confronted the defendant about the victim's allegations, and the defendant's response, were all relevant evidence concerning the criminal charges for which the defendant was on trial.  See McAfee, 430 Mass. at 490 ("[T]he testimony which [a party] seeks to contradict must first be deemed relevant to issues on trial").  We thus conclude the judge did not err in allowing the Commonwealth to call the victim's mother to testify as to significant, relevant issues, even if a portion of her testimony may have been anticipatorily subject to impeachment.  See Cramer v. Commonwealth, 419 Mass. 106, 111 n.3 (1994).

3.  Scope of cross-examination.  The defendant argues that the judge improperly hampered the defendant's cross-examination of the victim's mother by sustaining the Commonwealth's

11

objection to a line of questioning as to whether the defendant stated, "the devil made [me] do it." Because defense counsel did not object to the judge's limiting of cross-examination, we review for whether an improper restriction by the judge created a substantial risk of a miscarriage of justice. See Commonwealth v. Vickery, 82 Mass. App. Ct. 234, 235 (2012) ("[t]he acquiescence of defense counsel to actions taken by the trial judge can constitute a waiver of any objection to the judge's actions").

A judge has broad discretion to "direct the course of a trial, and this judicial discretion extends to limiting and otherwise controlling cross-examination." Commonwealth v. Vardinski, 438 Mass. 444, 451 (2003), citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "To determine whether the judge unreasonably limited cross-examination, 'we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination.'" Vardinski, supra, quoting Commonwealth v. Miles, 420 Mass 67, 72 (1995).

During cross-examination of the victim's mother, the defendant purportedly sought to impeach the victim regarding her statement that she overheard the defendant admit to the victim's mother that the "devil made him [sexually assault the victim]"; the victim's mother did not testify that the defendant made this

12

statement.  Defense counsel did not ask to be heard to press this line of questioning, but instead responded "[o]kay."

Even if it was error to sustain the objection, there was no substantial risk of a miscarriage of justice.  The jury heard the victim's and the victim's mother's conflicting testimony concerning the defendant's statements; on direct examination, the mother testified that the defendant told her "[t]hat if he touched [the victim] for any reason, it was by mistake 'cause they're always playing around and goofing around," which is indeed a different statement than what the victim testified to hearing, specifically, that the "devil made him do it."  Thus, the "degree of restriction on cross-examination" was not complete, as the witness's direct testimony offered evidence related to the defendant's intent.  See Vardinski, 438 Mass. at 451.  See also Commonwealth v. Pierce, 66 Mass. App. Ct. 283, 289 (2006) (no substantial risk of miscarriage of justice because "[c]ross-examination that is somewhat impeded, but not totally foreclosed, presents a weaker case for finding a denial of rights than a complete absence of cross-examination" [citation omitted]).  Therefore, the judge did not abuse his discretion by sustaining the Commonwealth's objection to defense counsel's question.  See Souza, 492 Mass. at 626.

4.  Closing argument.  The defendant argues that the Commonwealth misrepresented the victim's mother's testimony in its closing argument on two occasions; first, by stating, "[the mother's] testimony on direct examination was that the defendant did admit to touching [the victim].  She told you that he said they must have been playing around but that he touched her breast," and second, "if [the victim] was lying . . .  Why did [the defendant] tell his wife that he did touch [the victim's] breast?"  We see nothing improper about these statements.

The Commonwealth's statements were in reference to the victim's mother's testimony on direct examination, which was, in pertinent part:

Q:  "Did you speak to him about those allegations?"

A:  "I did."

Q:  "And, did he admit those allegations to you?"

A:  "He did not."

. . .

Q:  "So, when he said that he may have touched her, what was he referring to?"

A:  "Well, when she said that he touched her boob, so that's why I confronted him."

Q:  "So, it was her breast that he was talking about?"

A:  "Yes."

14

The prosecutor's statements were reasonable inferences that could be drawn from this testimony. See Commonwealth v. Roy, 464 Mass. 818, 829 (2013). See also Commonwealth v. Blaikie, 375 Mass. 601, 612 (1978) ("counsel may argue inferences from the evidence which are most favorable to his or her theory of the case, as long as the inferences drawn are reasonable").

Even assuming for the sake of argument that there was error, we discern no substantial risk of a miscarriage of justice.[8] In determining whether a prosecutor's improper statements warrant reversal, the following factors are collectively considered:

> "[W]hether defense counsel seasonably objected to the arguments at trial[;] whether the judge's instructions mitigated the error; whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters; whether the jury would be able to sort out the excessive claims made by the prosecutor; and whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant" (citations omitted).

Commonwealth v. Santiago, 425 Mass. 491, 500 (1997), S.C., 427 Mass. 298 and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998).

Here, as to the first factor, the defendant's lack of objection to the Commonwealth's closing argument "is some indication that the tone, manner, and substance of the now

---

[8] The defendant did not object to the Commonwealth's closing argument at trial. See Commonwealth v. Cuffee, 492 Mass. 25, 32 (2023).

15

challenged aspects of the prosecutor's argument were not unfairly prejudicial."  Commonwealth v. Toro, 395 Mass. 354, 360 (1985).  Second, although the judge did not specifically repeat during the final jury charge that statements made in either party's closing argument are not to be considered as evidence, the judge did so state at the beginning of the very short trial, and jury deliberations began on the same day.  See Commonwealth v. Allen, 379 Mass. 564, 583-584 (1980) ("[i]t is normally assumed" that any instructions given by judge "are followed by jurors, absent any reason appearing in the record to suggest otherwise").  As to the third factor, the prosecutor's statement, "Why did [the defendant] tell his wife that he did touch [the victim's] breast?" arguably "went to the very heart of the case" and "struck" at a key aspect of the defense, as the jury could have found that this interpretation of the mother's testimony bolstered the victim's credibility.  Commonwealth v. Shelley, 374 Mass. 466, 471 (1978), S.C., 381 Mass. 340 (1980) and 411 Mass. 692 (1992).  However, the prosecutor's statement was a reasonable interpretation based on the same testimony that the jury heard.  See Blaikie, 375 Mass. at 612 ("In their summations to the jury, counsel may argue inferences from the evidence which are most favorable to his or her theory of the case, as long as the inferences drawn are reasonable").  Fourth,

16

the jury returned verdicts of guilty of two of the charges against the defendant, and not guilty of the other three charges, thereby suggesting that even if the Commonwealth's closing was inartful, the jury were able to "take [the argument] with a grain of salt."  See Commonwealth v. Bradshaw, 385 Mass. 244, 277 (1982).[9]

5.  Cellebrite report.  The defendant next argues that the judge abused his discretion by denying the defendant's request for a mistrial, and by not reopening the evidence, where the defendant alleges the Commonwealth committed a discovery violation by failing to provide identifying information concerning the police officer who performed the Cellebrite extraction from the victim's cell phone.  Prior to defense counsel's calling of Weymouth police detective Edward Williams to testify for the purpose of admitting evidence of the Cellebrite report, the Commonwealth alerted the court that it did not think Williams was the officer who performed the extraction.  The defendant now argues that, because he was prevented from knowing the police officer who performed the

---

[9] As to the fifth factor, it is not clear that the Commonwealth's case against the defendant was overwhelming, see Santiago, 425 Mass. at 500, but the fact that this was a close case does not independently warrant reversal; "all these considerations must be undertaken on a case-by-case basis." Commonwealth v. Kozec, 399 Mass. 514, 518 (1987).

17

analysis documented in the Cellebrite report, he was prejudiced against being able to properly challenge the Commonwealth's evidence concerning text messages between the victim and defendant. We disagree.

It is undisputed that defense counsel possessed the Cellebrite report more than two years before trial, which in fact listed on the first page an officer Moideen as the examiner. Thus, there is no factual basis to support the claim of a discovery violation, and the judge properly denied the defendant's motion for a mistrial.[10]

Judgments affirmed.

By the Court (Henry, Smyth & Toone, JJ.[11]),

*Paul Little*

Clerk

Entered: September 17, 2025.

---

[10] The defendant appears to concede as much in his reply brief, as he invites us to consider a new claim, that trial counsel was ineffective for not identifying the examiner in the report. We decline to address the ineffectiveness claim raised for the first time in his reply brief. See Commonwealth v. Zinser, 446 Mass. 807, 810 (2006), quoting Care & Protection of Stephen, 401 Mass. 144, 150 & n.4 (1987) ("[a]bsent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal"). The defendant may pursue such a claim in a postconviction motion for new trial.

[11] The panelists are listed in order of seniority.