COMMONWEALTH *vs.* THOMAS W. CHILDS.

Suffolk. January 9, 1992. - July 27, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Confrontation of witnesses. *Witness*, Unavailability. *Evidence*, Previous testimony of unavailable witness.

The judge at a murder trial did not err as matter of law in declaring a witness unavailable, with the result that the witness's testimony recorded at the defendant's prior trial was introduced as evidence, where the judge was well within his discretion in concluding that steps taken by the police and prosecution, as shown by the evidence and representations made to the judge, constituted a good faith, diligent, reasonable search for the witness. [260-262]

At a murder trial, the judge's conclusion that testimony of an unavailable witness, recorded at the defendant's prior trial, was sufficiently reliable to be admitted in transcript form was not as matter of law erroneous, where the defendant had an adequate opportunity at the earlier trial to cross-examine the witness, so that the use of his recorded testimony at the second trial was not fundamentally unfair. [262-264]

INDICTMENT found and returned in the Superior Court Department on November 17, 1983.

The case was tried before *Charles R. Alberti*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*D. Lloyd Macdonald* (*Irene C. Freidel* with him) for the defendant.

*Philip Beauchesne*, Assistant District Attorney (*Brian J. Carney*, Assistant District Attorney, with him) for the Commonwealth.

O'CONNOR, J. In 1986, the Appeals Court reversed the defendant's 1984 conviction of murder in the second degree. 23 Mass. App. Ct. 33 (1986), *S.C.*, 400 Mass. 1006 (1987). The Appeals Court reasoned that "the combination of the defense

attorney's failure to attempt to keep the defendant's pre-1963 convictions from the jury, in accord with G. L. c. 233, § 21, First and Second, and his failure to invoke G. L. c. 127, § 152 [which provides for automatic sealing of the criminal records of offenses for which a pardon has been granted], constitute[d] ineffective assistance of counsel." *Id.* at 38. The defendant was retried in 1988 and was again convicted of murder in the second degree. The defendant appealed, and again the Appeals Court reversed the conviction, holding that the trial judge had erroneously admitted in evidence a record of testimony given at the first trial by a critical witness, George DeMattia, Jr. 31 Mass. App. Ct. 64 (1991). The Appeals Court agreed with the judge in the Superior Court that DeMattia's recorded testimony was sufficiently "reliable" to be admitted at the second trial, but disagreed with the judge's determination that the Commonwealth had made a sufficient, albeit unsuccessful, effort to locate DeMattia to demonstrate his unavailability to testify in person. *Id.* at 69-71. Both parties applied for further appellate review and we granted their applications. We now affirm the judgment entered in the Superior Court.

There was uncontroverted evidence at the trial that the defendant had shot and killed Kostas Efstathiou while Efstathiou was a front-seat passenger in a parked automobile. At the time of the shooting, the defendant was standing by the passenger side's open window. The only factual issue was whether the shooting was intentional, as the Commonwealth alleged, or accidental, as claimed by the defendant. The defendant's testimony was that Efstathiou had hit the defendant's hand and "[t]he gun went off." The only other eyewitness testimony bearing on the issue was the recorded testimony of DeMattia, who was in the rear seat of the vehicle occupied by Efstathiou. DeMattia said that the defendant had put his revolver against Efstathiou's temple and, after some prior conversation, said, "Well, you've got a problem now." Then, according to DeMattia's recorded testimony, Efstathiou "reached up and just sort of brushed [the revolver] away," following which the defendant "knocked [Ef-

stathiou's] hand away, turned the gun to his head, and it went off." Obviously, that testimony was critical.

On appeal, the parties have stipulated to the following procedural history: At one time they were given a June 6, 1988, trial date, but the session clerk advised them that there were several cases ahead of theirs scheduled to begin on that same date. On or about June 8 the clerk informed the prosecutor that a case having priority over the instant case was scheduled to begin trial June 13 and probably the trial would not be over before June 19. When that trial concluded, a necessary defense witness was unavailable. The case was reassigned for trial beginning September 26, 1988.

Ultimately, this case was called for trial on Monday, October 17, 1988. On that day, the Commonwealth presented evidence in support of its motion to have DeMattia declared unavailable as a witness and to have his recorded testimony at the 1984 trial ruled admissible at the trial soon to begin. The defendant requested that the trial be continued to permit the Commonwealth to locate DeMattia. That request was denied and trial began on October 18. On October 20, the trial was suspended and further evidence was presented concerning DeMattia's unavailability, as a result of which the judge ordered that DeMattia's testimony at the first trial would be admitted at the second trial "in the form of a transcript with examination and cross-examination from the original trial read into the record orally" and a sanitized transcript admitted as an exhibit. The judge's order was supported by a memorandum containing his findings. We set forth those findings below.[1]

"While it is true that the efforts of the Commonwealth were made on the eve of trial and consisted of efforts both of [Boston Police Detective Joseph] Lally and the [assistant] District Attorney . . . who was counsel at both trials, I would find that it was not anticipated that DiMattia was missing.

---

[1]Although it may be arguable that portions of the memorandum are recitations of evidence rather than findings, the parties treat them as findings, and so do we.

Lally testified that prior to trial a written note to appear had been sent to 85 High Street in Randolph, DiMattia's home at the time of the first trial. It was returned indicating address unknown. Mr. Lally then, in the course of his investigation, went to the home at 85 High Street, (owned at the time of the first trial by DiMattia's father) and found from the occupant that the father had sold the property and moved to Florida and that George DiMattia had departed the area. A check with the Randolph Police indicated that they had, in response to a request from Lally, checked out Mr. DiMattia's usual haunts and that he was believed by everyone to have departed the Commonwealth of Massachusetts.

"A check of the National Record Bureau revealed that there were three outstanding warrants in Massachusetts involving DiMattia for receiving stolen motor vehicles, operating under the influence and a misdemeanor all in August of 1987. No other record in any part of the country surfaced. A credit check with Mr. DiMattia's social security number and date of birth and name revealed nothing of import. Social Security Administration under the Rights of Privacy Statutes of the Federal Code refused to give any information.

"A phone call by the [assistant] District Attorney to Mr. DiMattia's father in Fort Meyer[s], Florida was successful in that the father indicated that he was the father and that he had not seen his son in a long time, and believed him to be incarcerated in the State of the Commonwealth of Pennsylvania, in the County near where is situated the City of Lancaster. He gave [the assistant district attorney] the correct telephone number of that institution as well as the name of an officer in charge. The bottom line there is that the institution was called, there appeared to be no such officer, nor was there any such prisoner as Mr. DiMattia presently incarcerated there.

"No effort was made to summons in DiMattia under the Interstate Compact as to the summonsing of witnesses since no location could be found where he might be brought before a magistrate to determine the appropriateness of his being brought back to Massachusetts for this trial.

"I am persuaded that George DiMattia is unavailable for appearance as a witness in the present case of *Commonwealth* v. *Thomas Childs*. I am persuaded that Commonwealth through Detective Lally and [the] Assistant District Attorney . . . have made a good faith and diligent effort to produce Mr. DiMattia.

"There remains a further issue assuming unavailability and a diligent search, whether or not the testimony of George DiMattia is reliable as a form as offered by the government. I believe that it is. The first trial was completely recorded and sworn to by an official reporter for the Superior Court of the Commonwealth. That report has been transcribed and a transcript is available and has been offered by the Commonwealth. I have examined that transcript and it appears that DiMattia was thoroughly examined by [the assistant district attorney] and cross-examined by [then defense counsel], including impeachment of DiMattia for a prior conviction.

"Therefore, the testimony as set out in the transcript is relevant and material to the issue of the innocence or guilt of Thomas Childs. The credibility of DiMattia is a matter of vital importance to both the Commonwealth and to the defendant. It must be decided, assuming unavailability and diligent effort, on whether or not the finder of fact, under [*Poirier* v. *Plymouth*,] 374 Mass. 206 (1978), would be materially assisted after hearing of the information from an 'actor' responding to questions and the transcript entered into exhibit for later reexamination by the jurors; or whether or not by virtue of some violation of the confrontational rights of the defendant under the Sixth Amendment to the Constitution of the United States and [art. 12 of the] Declaration of Rights of the Commonwealth, all evidence from DiMattia should be excluded. I think the latter position would be a matter of grave error.

"It is agreed by all parties that nothing can replace the live witness on the stand subject to present examination and cross-examination. Counsel for the defendant has suggested

that his cross-examination would take a different [tack] and not be fraught with the 'errors' of [prior defense counsel].

"I draw no inference at all of any error on the part of [prior defense counsel] apart from that set out by Brown, J. in the opinion of the Appeals Court. [Prior defense counsel] is known to be an experienced counsel representing principally defendants and an examination of the transcript does not contradict that reputation. What the defendant is really saying is that the testimony of DiMattia is damaging to him. That is not the issue. The issue is was the information assuming unavailability, etc. reduced to writing in a form that is reliable, could be readily presented and that the witness cross-examined as well as examined. I believe, without question, that it was and that the motion of the Commonwealth to admit the testimony of George DiMattia through the transcript of the first trial be *allowed*. In reaching this decision I have considered the arguments and representations of counsel, the affidavits and memoranda supplied, the testimony of the witness Lally and all appropriate rules of criminal procedure, statutory and case law authority."

The defendant argues that the judge's finding that "the Commonwealth had conducted a diligent search was erroneous as a matter of law because the Commonwealth made no effort of substance prior to the date of trial to locate [DeMattia], the Commonwealth failed to exhaust readily available means thereafter to locate him, and it made no effort, once an apparently current address of the witness in Florida was discovered, to secure his presence." In addition, the defendant observes, without elaboration or further argument, that, "[w]hen it became apparent on the day the case was called to trial that the Commonwealth had failed to conduct a reasonable search, the Court had the readily available alternative of ordering a continuance to allow a diligent search to proceed, but the Court chose instead to require the Defendant to be set at the bar."

The defendant also argues that the judge's finding that "the transcript of the witness' testimony at the 1984 trial was reliable was erroneous as a matter of law because the

Appeals Court and the Supreme Judicial Court had deter-
mined that the Defendant was denied effective assistance of
counsel in that proceeding and counsel's cross-examination of
the witness at the 1984 trial was consistent with such a find-
ing in that it likely resulted in a net incriminating impact on
the jury."

In making those arguments, the defendant relies on two
letters from the office of the district attorney to DeMattia
"go[ing] back as far as December of 1986" that were re-
turned to the sender, and on the testimony of Detective Lally
at the hearing on October 17 and 20, 1988, concerning
whether DeMattia's prior recorded testimony should be ad-
mitted at the second trial. The defendant also relies on repre-
sentations made to the judge at that time by the prosecutor.
The defendant points to the following testimony given by
Detective Lally: Lally made no effort to find DeMattia re-
garding the June or September, 1988, trial dates. He re-
ceived the summons for DeMattia about three weeks before
October 20, 1988. He did not try to serve it until late Sep-
tember or the first week of October, and then no one was at
the 25 High Street, Randolph, address that appeared on the
summons. A week later he returned to 25 High Street and
again no one was there. Lally made no other inquiries be-
tween October 7 and October 16. He returned to 25 High
Street on October 16 and was told that the DeMattia family
had lived at 85 High Street but George DeMattia, Sr., the
witness's father and the owner of the home at 85 High
Street, had moved three or four years earlier. On October 17
Lally for the first time made an inquiry at the Randolph post
office for a forwarding address for DeMattia (the witness),
but was unsuccessful. He obtained three local addresses from
the Randolph police department but DeMattia was at none
of them. The police told Lally that they knew DeMattia but
had not seen him for at least a year. They also told Lally
that they had heard that DeMattia had been incarcerated in
Pennsylvania, but that a check with the authorities in Penn-
sylvania indicated that DeMattia was not incarcerated there.
Lally had information that DeMattia's cousin lived at a cer-

tain address in Rhode Island, but a check revealed DeMattia was not there. Lally found out from the National Criminal Information Center that there were three outstanding Massachusetts warrants for DeMattia, and he found out from the Registry of Motor Vehicles that DeMattia had a valid Massachusetts license and there was no record of an out-of-State license or registration.

The representations made by the prosecutor to the judge to which the defendant calls our attention, are these: While Lally was talking with the Randolph police (sometime after October 17, 1988), the prosecutor obtained a printout from a "credit computer," which disclosed "a number of hits." These included the 85 High Street, Randolph, address and, the prosecutor said, "Tiffany Trail Casey, I believe it's South Carolina and also of Pandella Center, North Fort Meyers, Florida, with the same social security number, age 29 and I believe that's him." The prosecutor also represented that he telephoned DeMattia's father, using a telephone number he had obtained "from information in the Fort Meyers area." The prosecutor told the judge, "I introduced myself and I told him that I was looking for his son to testify in this murder case. He was at first reluctant to talk to me and to put him at ease I said I knew his son had some problems in the Massachusetts area with regard to warrants, and, but maybe that my office could be of some assistance in clearing up some of these matters if I could get my hands on him and get him back here to testify. He satisfied himself that I was, in fact, an Assistant District Attorney and had to spell my name for him and gave him my phone number and he laughingly said that he was positive that his son is not in Massachusetts because he had the warrants and that as long as I was who I said I was, the last he had heard of his son, and in my notes, they say thinks jail, Bethlehem, Pennsylvania. He thought he was in jail in Bethlehem. We talked some more and when he became more comfortable with me, he gave me the name of the Northampton County Jail, Officer Wells. He gave me a phone number . . . and I called that number and I asked for Officer Wells and I got an Officer Starr and I in-

troduced myself to Officer Starr and he caused their records to be searched and Officer Starr informed me that defendant with that name and number had never been lodged in that jail. Prior to that, I had asked George DeMattia, Sr. whether or not his son was in Florida and he said no, that his last known location was in the Bethlehem, Pennsylvania, Northampton County Jail, so at that point I terminated my efforts with George DeMattia, Sr. and I would offer my notes and the printout from the computer as an exhibit." In response to defense counsel's question, the prosecutor reported to the judge that the "inference [he] drew [from his conversation with Officer Starr] was that Mr. DeMattia had been bailed out before he made the institution." Also, in response to defense counsel's questions, the prosecutor said that he did not telephone DeMattia's father again after talking to Officer Starr, nor did he make further inquiries about charges pending in Northampton County, Pennsylvania.

Ordinarily, criminal defendants have a right to confront their accusers face to face. That right is guaranteed by the Sixth Amendment to the United States Constitution, art. 12 of the Massachusetts Declaration of Rights, and G. L. c. 263, § 5 (1990 ed.). The confrontation clauses of the Massachusetts Declaration of Rights and of G. L. c. 263, § 5, are equivalent to that of the Sixth Amendment. *Commonwealth v. Siegfriedt*, 402 Mass. 424, 430 (1988). Nevertheless, the prior recorded testimony of an unavailable witness may be admitted at trial if the party against whom it is offered had an adequate opportunity to cross-examine the witness on the prior occasion. *Commonwealth v. Bohannon*, 385 Mass. 733, 741 (1982). In discussing "unavailability" in this context, the Supreme Court has said: "[A] witness is not 'unavailable' for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good faith effort* to obtain his presence at trial. . . . [emphasis added]." *Ohio v. Roberts*, 448 U.S. 56, 74 (1980), quoting *Barber v. Page*, 390 U.S. 719, 724-725 (1968). See *Commonwealth v. Siegfriedt, supra* at 427. A diligent search is required. *Commonwealth v. Bohannon, supra* at 745. "The

lengths to which the prosecution must go to produce a wit-ness . . . is a question of reasonableness." *Ohio* v. *Roberts, supra* at 74, quoting *California* v. *Green,* 399 U.S. 149, 189 n.22 (1970) (Harlan, J., concurring). The burden of proving unavailability, as well as of proving adequate opportunity to cross-examine, rests on the party, here the prosecution, offer-ing the recorded testimony. *Commonwealth* v. *Bohannon, supra* at 742.

We are unpersuaded by the defendant's arguments that the judge erred as a matter of law in concluding that the Commonwealth had conducted a good faith, diligent, reason-able search. We reject the contention that the Common-wealth should have begun its search for DeMattia in antici-pation of trial to begin in June, and then September, 1988. Nothing in the record suggests that the parties reasonably expected that the witness would be needed at those times. The parties' stipulation, set forth above, suggests otherwise. Furthermore, we think the judge was justified in expressly concluding that, until mid-October, "it was not anticipated [by the Commonwealth] that DiMattia was missing." Nor do we think that the judge was required to find lack of dili-gence in that regard based on the fact that two 1986 letters addressed by the district attorney's office to DeMattia were returned to that office. Nothing in the record would require the conclusion that, before the actual trial date was estab-lished, the prosecutor should have been aware of the returned letters or, for other reasons, should have questioned DeMat-tia's availability.

Also, it seems to us, the judge was well within his discre-tion in concluding that the steps taken by Detective Lally and the prosecutor in mid-October, 1988, as shown by the evidence and representations made to the judge, constituted good faith, diligent, reasonable efforts to locate DeMattia. The defendant asserts that due diligence required the Com-monwealth to make further inquiries of authorities in Penn-sylvania after the prosecutor was told by personnel at the Northampton County jail that DeMattia was not there. Surely, it is possible that further exhaustive inquiry might

have enabled the Commonwealth to locate DeMattia, but due diligence does not require exhaustion of every lead, no matter how speculative. See *Ohio* v. *Roberts, supra* at 74-75.

Lastly, the defendant argues that the judge's conclusion concerning DeMattia's unavailability was erroneous as a matter of law because, as represented by the prosecutor, he had obtained information from a "credit computer" concerning DeMattia's Randolph address, a South Carolina address, and two Fort Meyers, Florida, addresses for DeMattia, but he did not follow up on that information. More particularly, the defendant contends, the Commonwealth should have requested, but did not request, the Florida police to find DeMattia. We do not agree. The judge would have been warranted in finding that the prosecutor was justified in relying on his telephone conversation with DeMattia's father, who reasonably assured the prosecutor that DeMattia was not in Florida and, in fact, was incarcerated in Pennsylvania as the Randolph police had told Detective Lally. The Northampton County jail's failure to corroborate DeMattia's incarceration did not warrant an inference that DeMattia was likely to be in South Carolina or Florida. The question of DeMattia's unavailability is a close one. However, we are not persuaded that the judge's resolution of that question was erroneous as a matter of law.

We turn to the question whether the judge erred as a matter of law in determining that DeMattia's recorded testimony at the first, 1984, trial was "reliable." The question is whether the defendant had an adequate opportunity to cross-examine DeMattia on that occasion, so that the use of his recorded testimony at the second trial was not fundamentally unfair. No suggestion is made that counsel at the first trial lacked a motive to cross-examine DeMattia vigorously, or that the judge at that trial unfairly limited counsel's cross-examination. Rather, the defendant argues that he, as distinguished from his counsel, did not have an adequate opportunity to cross-examine DeMattia at the original trial because his counsel, whom the Appeals Court held to have rendered ineffective assistance at the trial on other grounds, *Common-*

*wealth* v. *Childs*, 23 Mass. App. Ct. at 38, conducted such a defective cross-examination of DeMattia that the testimony lacked sufficient indicia of reliability to satisfy the defendant's right of confrontation. We shall discuss the particulars to which the defendant points, but first we think it appropriate to mention a relevant principle. A defendant "is not entitled under the confrontation clause to a cross-examination that is 'effective in whatever way, and to whatever extent, the defense might wish.' " *Commonwealth* v. *Siegfriedt, supra* at 429, quoting *Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985). "The decisions of [the Supreme] Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that the 'trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' " *Commonwealth* v. *Bohannon, supra* at 746, quoting *Dutton* v. *Evans*, 400 U.S. 74, 89 (1970) (plurality). See *Commonwealth* v. *Tanso*, 411 Mass. 640, 646-649 (1992). "Cross-examination, to pass muster under the confrontation clause, does not have to be a perfect cross-examination." *Id.* at 648.

The defendant cites several asserted deficiencies in the cross-examination of DeMattia at the 1984 trial. Defense counsel sought to introduce evidence of a pending charge against DeMattia. When the judge inquired what counsel's purpose was, counsel answered, "A pattern of drug use and abuse," and the evidence was excluded. Counsel failed to argue to the judge that the evidence was admissible, the defendant now argues, to show "the inducement which the fact of such a pending charge would create for the witness to testify according to the Commonwealth's wish."[2] Also, counsel argues here, defense counsel at the first trial failed to introduce a prior inconsistent statement made by DeMattia with respect to whether the defendant or someone else "had the precipitating argument" with the driver of the vehicle in

---

[2]The record does not show that any promises had been made to DeMattia concerning favorable treatment in return for testimony.

which the victim, Efstathiou, was a passenger. In addition, the defendant contends, original defense counsel on numerous occasions unnecessarily and detrimentally to his client elicited DeMattia's account of the elapse of time between Efstathiou's pushing of the revolver and the defendant's turning the revolver back to Efstathiou and firing it.

The judge's conclusion at the second trial that DeMattia's testimony was sufficiently reliable to be admitted in transcript form was not as a matter of law erroneous. Defense counsel conducted a lengthy cross-examination attacking DeMattia's sincerity, perceptions of events, and memory. Therefore, even if the examples on which defense counsel now focuses were to demonstrate less than a perfect cross-examination, a matter we need not decide, the purposes of the confrontation clause were met.

We conclude that the judge did not err in admitting evidence of DeMattia's recorded testimony.

*Judgment affirmed.*