COMMONWEALTH VS. JEFFREY S. ROBERIO.

Plymouth. September 8, 2003. - October 21, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Criminal,* Capital case, Assistance of counsel, Confrontation of witnesses. *Constitutional Law,* Assistance of counsel, Confrontation of witnesses. *Evidence,* Previous testimony of unavailable witness, Unavailable witness. *Witness,* Unavailability. *Homicide.*

INDICTMENTS found and returned in the Superior Court Department on August 25, 1986.

Following review by this court, 428 Mass. 278 (1998), the cases were tried before *Linda E. Giles,* J.

*James A. Couture* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

COWIN, J. In August, 1987, a jury found the defendant guilty of murder in the first degree, as well as of armed robbery. We reversed those convictions because of ineffective assistance of counsel, based on trial counsel's failure to raise the defense of lack of criminal responsibility due to the defendant's psychologi-

cal disorders combined with his use of alcohol. *Commonwealth v. Roberio*, 428 Mass. 278 (1998). On retrial, in January, 2000, the defendant was convicted of the same offenses. His murder conviction was premised on theories of felony-murder,[1] deliberate premeditation, and extreme atrocity or cruelty. In the instant appeal, the defendant contends that admission of the prior recorded testimony of two witnesses who testified at his first trial, Kenneth Jones and Rebecca Jennings, deprived him of his right to confront the witnesses against him in violation of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. He alleges that the Commonwealth did not satisfy the requirements for the admissibility of prior recorded testimony because neither witness was "unavailable." As to Jennings, he claims further that, because counsel at the first trial failed to focus on the issue of the defendant's mental capacity as affected by his disorders and alcohol, her cross-examination was constitutionally insufficient. The defendant also requests that we exercise our authority under G. L. c. 278, § 33E, to reduce the degree of murder. We affirm the convictions and decline to exercise our authority under G. L. c. 278, § 33E.

1. *Facts and procedural history.* Because the key issue at trial was the defendant's mental condition, the facts of the underlying crime may be succinctly stated. We summarize those facts the jury could have found. On the evening of July 29, 1986, the defendant and Michael Eagles[2] entered the Middleborough trailer home of the victim, a seventy-nine year old man who lived alone and kept a large amount of cash in his trailer. The following day, his body was discovered, savagely beaten with a blunt force object. Several bones, including his spine, were fractured, and he had been strangled with his own pillow case. He was alive at the time these injuries were inflicted. Cash, a shotgun, and miscellaneous personal property had been stolen from his home.

---

[1] The armed robbery did not merge with the conviction of murder in the first degree. See *Commonwealth v. Roberio*, 428 Mass. 278, 282 (1998).

[2] Michael Eagles was convicted of murder in the first degree and armed robbery in a separate trial; his convictions were affirmed. *Commonwealth v. Eagles*, 419 Mass. 825, 826 (1995).

Several weeks before the victim's death, the defendant had asked a friend to "do a break with him . . . to get . . . money" from an old man who had a "lot of money" and "didn't believe in banks." On the evening of the murder, the defendant and Eagles were driven to an area near the victim's trailer. The defendant said that he "was going to break into some man's house," and asked for a return ride about one hour later. On the return trip, the defendant was shirtless and wet (it had been raining) and Eagles was seen holding a roll of money. During this ride, Rebecca Jennings, the victim's granddaughter (who was not implicated in the crimes), was picked up and given a ride home. She noticed the shirtless defendant in the car but did not converse with him. Kenneth Jones, a friend of Eagles, testified regarding Eagles but said he did not see the defendant at all that day. The testimony of the last two witnesses, Jennings and James, was admitted as prior recorded testimony.

On the day after the murder, the defendant was observed with a fifty dollar bill and revealed the details of the murder to a friend. He also had the friend drive him back to the area of the trailer, where he retrieved the victim's shotgun and a metal box. The police later found these items. A State police fingerprint expert testified that a fingerprint on a beer stein found in the victim's kitchen was that of the defendant.

At the second trial, a neuropsychologist testifying for the defendant opined that the defendant had an attention deficit hyperactivity disorder, an "oppositional defiant disorder," and a learning disability, and that, when those conditions were exacerbated by alcohol use, the defendant lacked the substantial capacity to conform his conduct to the requirements of the law.[3]

2. *Prior recorded testimony.* To satisfy the confrontation clause, the Sixth Amendment establishes a rule of necessity, i.e., that the prosecution either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. The judge must be satisfied that the Com-

---

[3]The expert conceded on cross-examination that the defendant "had the specific intent to commit a robbery," knew what he was doing was wrong, and that he acted with deliberate intentional planning and purpose. Based on the defendant's actions, it did not appear to the expert that the defendant was "severely intoxicated."

monwealth has made "a good faith effort to produce the witness at trial." *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 427 (1988). Once unavailability is shown, the proponent of the recorded testimony must demonstrate that the hearsay is reliable. *Commonwealth* v. *Bohannon*, 385 Mass. 733, 742-743 (1982). Reliability depends on whether the testimony was shown to be reliable when given and whether the evidence of that testimony is sufficiently accurate. As to the first component, as a matter of constitutional law, the indicia of reliability are satisfied if the prior testimony was given under oath, the defendant was represented by counsel, counsel had opportunity to cross-examine the witness, and the issue at both judicial proceedings is similar. *Id.* at 742.[4]

The prosecutor informed the judge at the outset of the trial that Jones was a fugitive from justice in Florida wanted on a probation violation warrant issued in that State, and that the Commonwealth had been unable to locate him. Massachusetts State troopers had contacted his probation officer and a deputy sheriff in Florida and were seeking to locate him, but he had moved from his known address. A State trooper spoke with Jones's girl friend, who did not provide any useful information. His probation officer received no information regarding Jones's location in conversations with his mother and brother. A stake out of a bar in Florida which an informant indicated to authorities Jones would visit on New Year's Eve (trial began later in January) was unavailing. All information tended to show that Jones was addicted to "crack" cocaine and living on the street with no permanent address. Defense counsel conceded that the Commonwealth had made a good faith effort to locate Jones. The judge so concluded and allowed the Commonwealth's motion to admit his prior recorded testimony.

The situation changed during trial. On the fourth day of trial, as the Commonwealth was planning to rest its case, the prosecutor informed the judge that he had learned on the previous night that, as the result of a traffic stop in Florida, Jones had just been arrested on the probation violation. The prosecutor further stated if he were to proceed under the Uniform Act to Secure

---

[4]There is no question here concerning the second component, that evidence of the testimony is accurate.

the Attendance of Witnesses from Without a State in Criminal Proceedings (interstate act), see G. L. c. 233, §§ 13A-13D, it would take some time to complete the required paperwork and procedures.[5] The judge concluded that the witness "remain[ed] unavailable," and admitted his prior testimony from the first trial.

Although the defendant claims that mere inconvenience should not result in a determination of unavailability and that an attempt could have been made to expedite the interstate procedure to obtain Jones's early appearance, it was certainly within the judge's discretion to determine that it was impractical to compel the jury to wait the number of days (if not weeks) needed to produce Jones as a live witness. It is the combination here of the obviously adequate steps taken by the Commonwealth prior to trial to locate Jones, together with the fact that he was not found until midtrial, that resulted in satisfaction of the Commonwealth's burden of establishing unavailability. Given the Commonwealth's pretrial diligence, the prosecutor was not obligated to undertake at midtrial the cumbersome procedures of the interstate act or suffer a mistrial.[6]

With respect to Rebecca Jennings, the defendant claims both that she was not unavailable and that her prior recorded testimony was not reliable. Jennings was hospitalized suddenly for kidney stone surgery on the second day of the trial. When the Commonwealth was about to rest its case on Friday, January 14, 2000, the prosecutor informed the judge that Jennings's doctor had stated by letter that Jennings would not be released from the hospital until the following Tuesday, January 18 (the day when the evidence was expected to and did close), and would be unable to attend court until January 25. The judge

---

[5]The prosecutor represented that the following steps would be required: he would have to certify that Jones was a material witness and the judge would have to certify the paperwork; the paperwork would have to be sent to Florida for Jones to be served; and Jones would have a right to be heard regarding whether he was a material and necessary witness. There is no suggestion that the prosecutor's representations were inaccurate.

[6]The defendant makes no argument that the prior testimony of Jones was unreliable and has produced no evidence that Jones had any testimony relevant to the key issue in the case, i.e., the defendant's mental condition at the time of the killing.

ruled that she was unavailable and admitted her testimony from the first trial.

The defendant maintains that this was another instance of mere inconvenience, not unavailability. But this was a sudden operation, not a scheduled surgery, and a doctor had indicated that Jennings could not testify until one week after the evidence concluded. Thus, this presented a classic case of unavailability. The judge again acted within her discretion in determining that Jennings was unavailable.

The defendant argues that Jennings's prior testimony is not "reliable" because there was no opportunity for cross-examination. Although the defendant was represented by counsel who cross-examined Jennings at the first trial, present counsel claims that the cross-examination was ineffective because it did not focus on the defendant's mental state as exacerbated by the use of alcohol. The question presented is whether, when there has been a determination that counsel was ineffective in an earlier trial, the defendant had an adequate opportunity to cross-examine the witness on that occasion, so that admission of the witness's recorded testimony at the second trial is not fundamentally unfair.

We considered this precise issue in *Commonwealth* v. *Childs*, 413 Mass. 252 (1992). In that case, the defendant's original conviction of murder in the second degree was reversed due to ineffective assistance of counsel: the defense attorney had failed to keep from the jury evidence of the defendant's stale (see G. L. c. 233, § 21, First and Second) and pardoned (see G. L. c. 127, § 152) convictions. *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33 (1986), *S.C.*, 400 Mass. 1006 (1987), *S.C.*, 31 Mass. App. Ct. 64 (1991), *S.C.*, 413 Mass. 252 (1992). At retrial, it was uncontroverted that the defendant had shot and killed the victim. The only issue was whether the killing was intentional or accidental. The defendant testified that the gun went off accidentally, and the only other eyewitness on the matter was George DeMattia, Jr. *Commonwealth* v. *Childs*, 413 Mass. 252, 253 (1992). He was unavailable at the second trial, and the judge admitted his prior recorded testimony supporting the Commonwealth's theory of an intentional killing. Clearly, De-Mattia's "testimony was critical." *Id.* at 254. On appeal, the

defendant argued that he did not have an adequate opportunity to cross-examine DeMattia because his counsel, who had been determined ineffective as to other aspects of the defense, was defective in his cross-examination of DeMattia. Accordingly, he claimed that the testimony "lacked sufficient indicia of reliability to satisfy the defendant's right of confrontation." *Id.* at 263.

The "relevant" principle, the *Childs* court noted, *id.*, is that a defendant "is not entitled under the confrontation clause to a cross-examination that is 'effective in whatever way, and to whatever extent, the defense might wish.' *Commonwealth* v. *Siegfriedt*, [402 Mass. 424, 429 (1988)] . . . . 'The decisions of [the Supreme] Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that the "trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." ' *Commonwealth* v. *Bohannon*, [385 Mass. 733, 746 (1982)]. . . . See *Commonwealth* v. *Tanso*, 411 Mass. 640, 646-649 (1992). 'Cross-examination, to pass muster under the confrontation clause, does not have to be a perfect cross-examination.' *Id.* at 648." *Commonwealth* v. *Childs, supra.*

Although defense counsel asserted several deficiencies in the prior cross-examination of DeMattia (failure to introduce evidence of a pending charge against him, failure to introduce a prior inconsistent statement, and the repetitious elicitation of testimony harmful to the defendant), *id.* at 263-264, the court determined that defense counsel had conducted a "lengthy" cross-examination that attacked DeMattia's "sincerity, perceptions . . . and memory." *Id.* at 264. The court concluded that even should they deem the cross-examination less than perfect, the purposes of the confrontation clause were met. Hence, the judge's conclusion at the second trial, that DeMattia's recorded testimony was sufficiently reliable to be admitted, was not error. In other words, the fact that counsel was ineffective in regard to one issue does not taint all aspects of the prior trial. Counsel may be deemed ineffective in one respect while his conduct as to other matters may be adequate. The United States Supreme Court has reached a similar result in accord with Federal

constitutional principles: as long as there was "adequate op-
portunity to cross-examine" at the first trial and counsel
"availed himself of that opportunity," the prior testimony has
sufficient "indicia of reliability." *Mancusi* v. *Stubbs*, 408 U.S.
204, 216 (1972). We glean from these cases that while a
"perfect" cross-examination is not required, see *Commonwealth*
v. *Childs*, *supra* at 263, the confrontation clause requires an
adequate cross-examination or a reasonable strategic decision to
forgo such questioning. Counsel must have the opportunity for
cross-examination, and counsel may be ineffective if the op-
portunity to cross-examine was not utilized.

But that rule does not affect the situation before us. Jen-
nings's testimony did not relate to the reason counsel was
deemed ineffective; furthermore, counsel had the opportunity to
cross-examine her with respect to the testimony she offered.
Counsel at the first trial was found to be ineffective for failure
to present evidence of the defendant's mental condition and the
effect of intoxication on that mental condition. Jennings's
testimony had no bearing on that issue. She testified only to the
weather and the defendant's physical appearance (shirtless and
wet) just after the murder. (Her direct testimony was merely
two pages long; her cross-examination was another one-half
page.) Her testimony, if believed, established only the
defendant's presence in the vicinity of the crime near the time
of the murder, nothing more. The ineffective assistance
concerned the defendant's alleged mental condition; the
completely unrelated testimony of Jennings is not affected by
that finding. "That some of the conduct of . . . defense counsel
in the first trial was deemed ineffective does not . . . taint the
entire cross-examination." *Commonwealth* v. *Childs*, 31 Mass.
App. Ct. 64, 70 (1991). Defense counsel had the opportunity to
cross-examine Jennings and exercised it. Neither the right to
confront witnesses nor the right to cross-examine was impinged
here.

The defendant claims that his motive or purpose in cross-
examining Jennings at the first trial was not identical to his mo-
tive or purpose in cross-examining her at the retrial, because his
original counsel did not mount a defense based on the
defendant's mental condition. He claims that our law requires
that the prior testimony of the now unavailable witness must

have been "in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered." *Commonwealth* v. *Ortiz*, 393 Mass. 523, 532 (1984), quoting *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980). However, to decide whether the defendant's motive to cross-examine at the earlier proceeding is similar to his motive to cross-examine at the current trial, "[t]he issue on which the testimony was introduced in the [earlier] proceeding as well as the purpose for which the testimony was offered must be substantially similar to the issue and purpose for which the same testimony is offered at the subsequent . . . trial." *Commonwealth* v. *Ortiz, supra*, quoting *Commonwealth* v. *Canon*, 373 Mass. 494, 512 (1977), cert. denied, 435 U.S. 933 (1978) (Liacos, J., dissenting). Here, the issue on which the testimony was introduced by the Commonwealth at the first trial was the same as the issue for which it was offered by the Commonwealth at the second trial: to prove the defendant's presence in the vicinity of the crime at the relevant time. Concerning the requirement that the prior testimony must have been given in a proceeding addressed to substantially the same issues as the present proceeding, in both trials the issue was the defendant's culpability. When the defendant's theory of defense changes because ineffective assistance has been replaced by acceptable representation, the right of the Commonwealth to present testimony of an unavailable witness on other subject matter cannot logically be affected.

The defendant has not shown that his right to confrontation has been violated. Rather, he seeks an opportunity to question Jennings on a subject on which she did not testify, theorizing that that testimony would be beneficial to the defense.[7] We reject the defendant's implicit invitation to adopt a per se rule that, if failure to present a certain defense is the basis for reversal of a conviction, cross-examination of each witness must have focused on that subject or that witness's prior rec-

---

[7]The defendant has made no showing by means of affidavit or otherwise, either at trial or on appeal, that Jennings has anything to say on the subject of the defendant's mental state as affected by the use of alcohol.

orded testimony is not admissible. This is particularly true concerning a witness whose testimony is as restricted in scope as that of Jennings. There was no abuse of discretion or other error of law in admitting the prior recorded testimony in this case.

3. *Relief pursuant to G. L. c. 278, § 33E.* We have reviewed the entire record and conclude that there is no reason to exercise our power under G. L. c. 278, § 33E, to reduce the degree of murder.

*Judgments affirmed.*