## Commonwealth vs. Robert Robinson.

Bristol. March 6, 2008. - June 19, 2008.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Evidence,* Previous testimony of unavailable witness, Unavailable witness, Spontaneous utterance. *Practice, Criminal,* Witness, Confrontation of witnesses. *Witness,* Unavailability. *Constitutional Law,* Confrontation of witnesses.

At a criminal trial, the judge did not err in admitting in evidence the prior recorded testimony of an unavailable witness, where the Commonwealth made a sufficient showing of a good faith effort to locate and produce the witness at trial. [674-678]

At the trial of indictments charging the defendant with unarmed robbery and assault and battery, the admission in evidence of the out-of-court statement of the victim to a police officer, identifying the defendant as the attacker, did not violate the defendant's right of confrontation under the Sixth Amendment to the United States Constitution or art. 12 of the Massachusetts Declaration of Rights, where the statement, which was offered spontaneously and without prompting, was not testimonial per se, and where the statement was not testimonial in fact, in that a reasonable person in the declarant's position would not have anticipated that his statement would be used against the defendant in prosecuting the crime [678-680]; further, the judge properly admitted the statement as a spontaneous utterance, where the circumstances indicated that the victim was still under the sway of the exciting event when he made the identifying statement, and where, in any event, the evidence was cumulative of another witness's in-court identification of the defendant as the victim's attacker [680-681].

Indictments found and returned in the Superior Court Department on September 29, 2004.

The cases were tried before *E. Susan Garsh,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Steven E. Gagne,* Assistant District Attorney, for the Commonwealth.

*Elizabeth Doherty* for the defendant.

Ireland, J. In June, 2005, a Superior Court jury convicted the

defendant, Robert Robinson, of the unarmed robbery of Mario Perez (Mario), in violation of G. L. c. 265, § 19 (*b*), and also convicted the defendant of assault and battery against Mario, in violation of G. L. c. 265, § 13A. The defendant appealed, arguing that the trial judge erred when she admitted the victim's prior recorded statement and a police officer's testimony recounting the victim's out-of-court statement identifying the defendant. The Appeals Court reversed the convictions and remanded the matter for a new trial. *Commonwealth* v. *Robinson*, 69 Mass. App. Ct. 576, 582 (2007). The sole basis for the Appeals Court's decision was its conclusion that the prior recorded testimony should not have been admitted because the Commonwealth made an "insufficient showing of a good faith effort to locate Mario and [thus] Mario's unavailability was not established." *Id.* We granted the Commonwealth's application for further appellate review. Because we conclude that the prior recorded testimony and the out-of-court statement were properly admitted in evidence, we affirm the defendant's convictions.

*Background.* The facts in this case are set forth in *Commonwealth* v. *Robinson*, *supra* at 576-577; thus, we present the relevant facts in summary form in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with the issues raised.

On April 11, 2004, shortly after Mario had left a bar in New Bedford, he was beaten and robbed by two men. His brother, Francisco Perez (Francisco), came to his aid and they chased the two attackers.

The attackers ran into a dwelling and locked the door behind them. Mario and Francisco stayed outside, telephoned the police, and waited. Two police officers arrived and went inside the building, where they found the defendant and Angel Marcial. The defendant and Marcial were arrested, and a search revealed that Marcial had Mario's wallet in his pocket. As the officers escorted the defendant and Marcial out of the building, Mario and Francisco recognized them as the two men who had beaten and robbed Mario. Mario ran toward the officers, pointed to the defendant and Marcial, and stated, "That's the two guys." The statement was not in response to any question by the officers.

Mario testified at a probable cause hearing held in July, 2004. At that time he lived on Washburn Street in New Bedford. In

October, 2004, the defendant was arraigned in the Superior Court.

On June 8, 2005, twelve days before trial, the Commonwealth filed a motion in limine seeking to introduce Mario's testimony from the probable cause hearing, asserting his unavailability and claiming that the prior recorded testimony exception to the hearsay rule applied. In support of the motion, the Commonwealth submitted affidavits from a State trooper and an assistant district attorney attesting to their efforts to locate Mario. On the first day of trial, the judge granted the Commonwealth's motion.

After the jury returned guilty verdicts on both charges,[1] the judge sentenced the defendant to State prison for a term of from three to three and one-half years.

*Discussion.* 1. *Admission of prior recorded testimony.* In criminal cases, the admission of prior recorded testimony from an unavailable witness implicates the right of confrontation under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Salim,* 399 Mass. 227, 234 (1987). Prior recorded testimony may be admitted in evidence where the witness is unavailable, *Commonwealth* v. *Bohannon,* 385 Mass. 733, 741 (1982), if the prior testimony was given under oath in a proceeding where the issues are substantially the same as the current proceeding, and the party against whom it is being offered had a reasonable opportunity and similar motivation to cross-examine the witness.[2] See *Commonwealth* v. *Trigones,* 397 Mass. 633, 638 (1986). "Before allowing the Commonwealth to introduce prior recorded testimony [of an alleged unavailable witness], the judge must be satisfied that the Commonwealth has made a good faith effort to locate and produce the witness at trial." *Commonwealth* v. *Sena,* 441 Mass. 822, 832 (2004), and cases cited. Whether the Commonwealth has been sufficiently diligent in attempting to obtain

---

[1]The grand jury returned indictments charging the defendant with unarmed robbery and assault and battery by means of a dangerous weapon. However, at the close of the Commonwealth's case, the judge allowed the defendant's motion for a required finding of not guilty with respect to the dangerous weapon portion of the latter indictment.

[2]At trial and on appeal the defendant does not contend that the prior recorded testimony would be inadmissible for any reason other than the Commonwealth's purported failure to demonstrate Mario's unavailability.

the witness's attendance "depends upon what is a reasonable effort in light of the peculiar facts of the case." *Id.*, quoting *Commonwealth* v. *Lopera*, 42 Mass. App. Ct. 133, 136 (1997).

The defendant argues that the Commonwealth's evidence was "insufficient to support the finding that a good faith effort was made to produce the witness at trial." However, he does not contest the Commonwealth's factual assertions about the efforts taken to secure Mario's attendance at trial, which we summarize.

In early 2005, the Commonwealth asked the State police to help locate Mario for purposes of testifying at the defendant's trial.[3] A trooper obtained a photograph of Mario from the New Bedford police department and on several occasions visited his last known address on Washburn Street. On more than one occasion, he noticed that a sport utility vehicle with a Rhode Island registration plate was parked outside. The trooper checked the registration of the vehicle and discovered that it was registered to Francisco at an address in Providence, Rhode Island. The trooper then made several attempts to locate Mario at the Providence address but there was no response when he knocked on the door.[4] However, during one such attempt, he could hear music playing inside. He also spoke with neighbors and members of the property's management company, showing Mario's photograph, but no one could recall having seen him. During his investigation, the trooper learned that Mario had two outstanding warrants for his arrest out of the New Bedford Division of the District Court Department. In addition, the Commonwealth tried to contact Mario by mailing summonses and letters to the

---

[3]The affidavit from the State trooper does not provide the precise date the Commonwealth first requested aid from the State police. The defendant does not dispute the Commonwealth's assertion that "early 2005" should be interpreted as no later than April because the Commonwealth would not have known when to summon Mario for trial until after the final pretrial conference, which was held on March 14, 2005. The Commonwealth's claim that it did not know the trial date until after that final pretrial conference comports with Mass. R. Crim. P. 11, as appearing in 442 Mass. 1509 (2004), and Superior Court Standing Order 2-86, Parts VI and VII. Therefore, we may assume, as the Commonwealth asserts, that the search for Mario began no later than April.

[4]The trooper's affidavit does not provide precise dates, nor does it specify the number of visits that were made to the New Bedford and Providence addresses.

Washburn Street address that were returned with the notation "not known at this address."[5]

The Commonwealth eventually found Francisco by tracking a pending case against him in the New Bedford District Court. On the Wednesday before the defendant's trial, Francisco was served in hand with a summons when he appeared in court for his own case. He appeared for the defendant's trial. At that time, Francisco explained that Mario had moved to New Jersey, but he did not know the address. Francisco also stated that Mario did not have a telephone but would occasionally call him on a friend's telephone.

Given these facts, we are unpersuaded by the defendant's arguments that the "Commonwealth paid scant attention to Francisco" and that, if earlier efforts had been made to locate Francisco, the search activity for Mario would have included data sources and law enforcement in New Jersey. Moreover, even though the Commonwealth was unable to find Francisco until the Wednesday before trial, the search for Mario began a couple of months before trial. See *Commonwealth* v. *Sena, supra* at 833 (Commonwealth showed diligent good faith effort to locate witness where search began one week before trial); *Commonwealth* v. *Hunt,* 38 Mass. App. Ct. 291, 294 n.3 (1995) ("Commonwealth has no duty to commence its efforts to locate a witness until shortly before trial").

The defendant also argues that, after the Commonwealth learned from Francisco that Mario was in New Jersey, the fact that the Commonwealth did not search for him there shows a lack of good faith effort to locate him. It is true that "[m]ere proof of Mario's absence from the Commonwealth at the time of trial" is insufficient proof of unavailability. See *Commonwealth* v. *Ross,* 426 Mass. 555, 558 (1998); *Commonwealth* v. *DiPietro,* 373 Mass. 369, 381 (1997).[6] However, the Commonwealth does not have to exhaust every lead to meet its burden; it must only exercise

[5]The affidavits from the assistant district attorney do not specify the dates or the number of summonses mailed to the New Bedford address.

[6]The cases on which the defendant relies are easily distinguished. See *Barber* v. *Page,* 390 U.S. 719, 723, 725 (1968) (insufficient where State knew witness was incarcerated and made no effort to obtain witness's presence at trial); *Commonwealth* v. *Ross,* 426 Mass. 555, 558-559 (1998) (insufficient where Commonwealth asked witness's mother but did not ask witness whether

reasonable due diligence. See *Commonwealth* v. *Ross, supra* at 557-558; *Commonwealth* v. *Childs,* 413 Mass. 252, 262 (1992). As discussed *supra,* this reasonable due diligence requirement is fact driven.[7] Here, the Commonwealth had reason to believe that further efforts to locate Mario in New Jersey would be unsuccessful because he had outstanding arrest warrants in New Bedford and, thus, was unlikely to return to the Commonwealth voluntarily. See *Commonwealth* v. *Charles,* 428 Mass. 672, 678 (1999).

Therefore, considering the measures taken by the Commonwealth in conjunction with the limited information available about Mario's location and his outstanding warrants, the judge was warranted in concluding that the Commonwealth's efforts were reasonable and that it satisfied its due diligence requirement. See *Commonwealth* v. *Roberio,* 440 Mass. 245, 248 (2003) (sufficient where Commonwealth enlisted State troopers, who contacted witness's probation officer and girlfriend, and executed "stake out" of bar in Florida); *Commonwealth* v. *Siegfriedt,* 402 Mass. 424, 426-428 (1988) (where second trial began within week of mistrial, not error to rely on unavailability finding by same trial judge in first trial and on testimony that police had made additional attempts to locate witness); *Commonwealth* v. *Salim,* 399 Mass. 227, 233-235 & n.3 (1987) (sufficient where local police enlisted aid of Dallas police after learning from witness's relatives that witness might have moved to that city); *Commonwealth* v. *Clark,* 363 Mass. 467, 470-471 (1973) (suf-

she was willing to return to testify); *Commonwealth* v. *Bohannon,* 385 Mass. 733, 744 (1982) (insufficient where motion judge relied on another judge's finding of unavailability and Commonwealth made no further efforts to secure witness's presence); *Commonwealth* v. *Florek,* 48 Mass. App. Ct. 414, 415-416 (2000) (insufficient where witness's mother gave prosecutor witness's address and Commonwealth merely sent summons and letter to address but never involved police). Unlike these cases, here the Commonwealth searched for Mario by enlisting the aid of the State trooper and mailing summonses. The Commonwealth's efforts did not produce an address, but merely revealed that Mario might be living somewhere in New Jersey.

[7]We are not persuaded by the defendant's argument that the "Commonwealth did not pursue reasonable and available leads" because it failed to take advantage of technological advances such as asking Francisco to trace the location of Mario's last telephone call. See *Commonwealth* v. *Childs,* 413 Mass. 252, 262 (1992).

ficient where relatives were contacted and several police departments joined in search for witness).[8]

2. *Prior out-of-court statement identifying the defendant.*
a. *Confrontation clause.* The defendant contends that when the police officer "was permitted to testify that, without prompting, Mario said, 'That's the two guys,' " it violated his right to confrontation under the Sixth Amendment. In particular, the defendant claims that Mario's out-of-court statement was "testimonial in fact" and, therefore, inadmissible under *Crawford* v. *Washington*, 541 U.S. 36, 53-54 (2004) (*Crawford*), where the Commonwealth has failed to establish Mario's unavailability. We disagree.

In *Crawford*, the United States Supreme Court held that testimonial out-of-court statements are inadmissible under the confrontation clause of the Sixth Amendment "unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 59. The Court declined to provide a "comprehensive definition of 'testimonial,' " *id.* at 68, but instead discussed various formulations of the "core class" of testimonial statements.[9] *Id.* at 51. In *Davis* v. *Washington*, 547 U.S. 813, 822 (2006), the Court again declined to produce an exhaustive classification of testimonial and nontestimonial statements. However, the Court did state that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assist-

---

[8]Because the Commonwealth made a reasonable effort to ascertain Mario's location, the defendant's argument that "if reasonable measures [had been taken] to determine Mario's location, protection under the Uniform Act to Secure Attendance of Witnesses would have been available" lacks merit.

[9]The "core class" of testimonial statements are "[1] 'ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially' . . . ; [2] 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' *White* v. *Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); [or, 3] 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Crawford* v. *Washington*, 541 U.S. 36, 51-52 (2004).

ance to meet an ongoing emergency. [The statements] are testimonial when the circumstances objectively indicate that there is no such ongoing emergency . . . ." *Id.* In addition, the Court provided four indicia that help determine whether the primary purpose of a statement is testimonial; pertinent here is whether the declarant was "speaking about events *as they were actually happening*, rather than 'describ[ing] past events.' " *Id.* at 827, quoting *Lilly* v. *Virginia*, 527 U.S. 116, 137 (1999). The Court also declared that "statements made in the absence of any interrogation are [not] necessarily nontestimonial." *Davis* v. *Washington, supra* at 822 n.1.

In *Commonwealth* v. *Gonsalves*, 445 Mass. 1 (2005), cert. denied, 548 U.S. 926 (2006), this court articulated a framework for determining whether an out-of-court statement is testimonial. We held that "statements made in response to questioning by law enforcement agents are per se testimonial, except when the questioning is meant to secure a volatile scene or to establish the need for or provide medical care." *Id.* at 3. Out-of-court statements offered spontaneously, without prompting, are not per se testimonial. *Id.* at 11. However, "out-of-court statements that are not testimonial per se must be examined to determine if they are nonetheless testimonial in fact by evaluating whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting a crime."[10] *Id.* at 3.

The defendant's reliance on *United States* v. *Hinton*, 423 F. 3d 355, 360-361 (3d Cir. 2005), and *United States* v. *Pugh*, 405 F.3d 390, 399 (6th Cir. 2005), to support his assertion that the out-of-court statement was testimonial in fact because Mario would have reasonably anticipated that his statement to the police would be used in the investigation, is misplaced. In *United States*

---

[10]The defendant's trial took place in June, 2005, after the *Crawford* decision, but before *Davis* v. *Washington*, 547 U.S. 813 (2006), and *Commonwealth* v. *Gonsalves*, 445 Mass. 1 (2005), cert. denied, 548 U.S. 926 (2006). However, our analysis of the defendant's argument pursuant to the Sixth Amendment to the United States Constitution considers these cases. See *Griffith* v. *Kentucky*, 479 U.S. 314, 322 (1987) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"); *Commonwealth* v. *Galicia*, 447 Mass. 737, 739 (2006).

v. *Hinton, supra* at 361, the witness identified his assailant while riding in a police cruiser in pursuit of the suspect. Unlike that case, here Mario was describing events as they were unfolding rather than identifying the defendant to create a record that could be used at trial. See *Davis* v. *Washington, supra* at 827. In *United States* v. *Pugh, supra,* during a *police interrogation* the witness identified the defendants in a photograph, whereas here Mario's identification was offered spontaneously without prompting from the officers. A reasonable person in Mario's position would not have anticipated that his statement would be used against the defendant in prosecuting the crime. Therefore, we conclude that the out-of-court statement is not testimonial and its admissibility is governed by the Commonwealth's rules of evidence. *Crawford, supra* at 68.

b. *Spontaneous utterance.* The judge properly admitted Mario's out-of-court statement as a spontaneous utterance. "A spontaneous utterance will be admitted in evidence if (1) there is an occurrence or event 'sufficiently startling to render inoperative the normal reflective thought processes of the observer,' and (2) if the declarant's statement was 'a spontaneous reaction to the occurrence or event and not the result of reflective thought.' " *Commonwealth* v. *Santiago,* 437 Mass. 620, 623 (2002), quoting 2 McCormick, Evidence § 272, at 204 (5th ed. 1999). "A judge has broad discretion in determining whether a statement qualifies as a spontaneous utterance, and that determination will only be disturbed [for] an abuse of discretion." *Commonwealth* v. *Ruiz,* 442 Mass. 826, 832 (2004).

The judge's ruling had sufficient support. Without being prompted, Mario made the identifying statement a short distance from where he had been beaten and robbed, after he had chased the defendant and Marcial to the house where they were arrested. Furthermore, the fact that the record is silent as to how much time elapsed between the assault and the statement does not disqualify the statement as a spontaneous utterance as long as the excitement or stress of the startling event has not dissipated. *Id.* at 833 ("There is no requirement that the statements be made contemporaneously with the exciting cause"). The circumstances here indicate that Mario was still under the sway of the exciting event when he made the identifying statement, and thus, the

statement was properly admitted.[11] Furthermore, even if we assume that the out-of-court statement identifying the defendant was erroneously admitted, any error was nonprejudicial because the evidence was cumulative; Francisco identified the defendant as Mario's attacker in court.[12] Cf. *Commonwealth* v. *Thomas*, 429 Mass. 146, 158 (1999).

*Judgments affirmed.*

---

[11]We are unpersuaded by the defendant's reliance on *Commonwealth* v. *King*, 436 Mass. 252, 255 (2002), to support his contention that the judge abused her discretion in admitting the statement as a spontaneous utterance because "there was insufficient evidence to establish whether Mario's level of intoxication rendered him incompetent and thus, his statement unreliable." Here, although Mario was intoxicated when he was attacked, there is nothing in the record to suggest his intoxication level made him incompetent.

[12]We reject the defendant's assertion that Francisco's identification was compromised because it was dark and he was intoxicated. This was a question for the jury. See *Commonwealth* v. *Gomez*, 450 Mass. 704, 711 (2008) ("The weight and credibility of the evidence is the province of the jury"). Because the defendant's trial counsel thoroughly cross-examined Francisco on these matters, we can infer that the jury rejected this claim.